872 A.2d 1177

### COMMONWEALTH of Pennsylvania, Appellee

v.

### Darrick HALL, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 10, 2002.

Decided April 29, 2005.

528

Cristi A. Charpentier, Thomas J. Wagner, for Darrick Hall, appellant.

Nicholas J. Casenta, Amy Zapp, Harrisburg, for the Com. of PA, appellee.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

This is a direct appeal from the final order of the Court of Common Pleas of Chester County denying Appellant's petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546.[1] For the reasons that follow, we affirm the order of the PCRA court.

The facts underlying Appellant's conviction, as set forth in this Court's opinion on direct appeal, are as follow:

At approximately 10:00 a.m. on December 18, 1993, Troy Davis, Tyrone Greene and appellant departed Philadelphia by automobile for Coatesville in Chester County, Pennsylvania with the intent of committing a robbery in Coatesville. Appellant and his cohorts arrived in Coatesville at approximately 12:00 noon. Upon arriving in Coatesville, the three men decided to rob a [L]aundromat on Main Street. Appel-

---

1. In cases where a penalty of death has been imposed, the denial of post-conviction relief is directly reviewable by this Court. 42 Pa.C.S. § 9546(d).

lant and Greene proceeded into the [L]aundromat while Davis waited in the car as the getaway driver. Appellant, armed with a loaded .357 caliber magnum revolver, went to the cashier's area in the rear of the [L]aundromat while Greene, armed with a .22 caliber revolver, stayed near the front entrance to the [L]aundromat. Appellant withdrew his revolver and demanded that the victim give him the money from the [L]aundromat. After the victim refused to give appellant the money, appellant fired a shot which grazed the victim's head. Appellant then fired another shot from a distance of approximately four (4) to ten (10) inches which entered the back portion of the right side of the victim's head and traversed through the victim's brain causing instantaneous death. When appellant fired the fatal shot, his .357 caliber revolver was in double action firing mode, which would require nine pounds of pressure on the trigger to activate the hammer in order to fire a round.

After shooting the victim, appellant backed out of the [L]aundromat waving his revolver at the ten (10) to fifteen (15) people in the [L]aundromat. Appellant then fled in the getaway car to a house in Coatesville where appellant and his cohorts changed clothes and joked about their weapons with the man who resided at the house. The three men eventually left the Coatesville house and returned to Philadelphia where they changed clothes once again at a fast-food restaurant.

Between December 19, 1993 and December 24, 1993, detectives in the Chester County District Attorney's Office interviewed three eye witnesses to the murder. On December 23, 1993, one of the witnesses identified appellant from a photographic array of eight (8) black males prepared by a Chester County detective. On December 24, 1993, a second eyewitness, independently from the first eyewitness, identified appellant from the same photographic array.

On December 27, 1993, an arrest warrant was issued for appellant's involvement in the murder and robbery. At approximately 6:50 a.m. on December 28, 1993, officers of the Philadelphia Police Stakeout Unit arrested appellant at

his mother's home in Philadelphia. The Philadelphia police transported appellant to the Philadelphia Police Administration Building where appellant was processed and turned over to the Chester County detectives. After waiving his *Miranda* rights, appellant was questioned by the Chester County detectives in the Philadelphia Police Administration Building. Appellant then made a statement in which he confessed to his participation in the robbery and murder. Appellant, however, contended that the shooting was an accident which occurred during a struggle with the victim. Appellant's statement was reduced to a typewritten document by a Chester County detective. Appellant ultimately reviewed, corrected, and signed the typewritten document. *Commonwealth v. Hall,* 549 Pa. 269, 701 A.2d 190, 195–96 (1997) (footnotes omitted).

Following a jury trial, Appellant was convicted of first degree murder, carrying a firearm without a license, robbery, conspiracy to commit robbery, and recklessly endangering another person. Appellant was acquitted of conspiracy to commit murder. Following the penalty hearing, a sentence of death was imposed.[2] Appellant was represented at trial by Robert E. Miller, Esquire.

On appeal to this Court, Appellant was represented by new counsel, Vincent P. DiFabio, Esquire. On February 9, 1995, the trial court filed a Rule 1925(a) opinion in response to Appellant's statement of matters complained of on appeal. On May 22, 1995, the parties filed a joint motion for remand for an evidentiary hearing on allegations of ineffective assistance of trial counsel. This Court granted that motion, and a five-day evidentiary hearing was held in the trial court. On January 26, 1996, the trial court issued its findings of fact. On September 17, 1997, this Court affirmed the judgment of sentence. *Commonwealth v. Hall,* 549 Pa. 269, 701 A.2d 190

2. The jury found two aggravating circumstances, that Appellant committed the killing in the perpetration of a felony, and that during the commission of the killing, Appellant knowingly created a grave risk of death to another person in addition to the victim, which it determined outweighed the one mitigating factor that the events leading up to the fatal shot included the possibility of a struggle. 42 Pa.C.S. § 9711(d)(6); 9711(d)(7) and 9711(e)(8), respectively.

(1997). On April 20, 1998, the United States Supreme Court denied certiorari. *Hall v. Pennsylvania,* 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998).

On May 26, 1998, Appellant filed a timely *pro se* PCRA petition.[3] At that same time, Appellant through counsel, Robert Dunham, Esquire, requested that the court appoint the Center for Legal Education, Advocacy & Defense Assistance (CLEADA) to represent Appellant and that the court issue a stay of the execution previously issued by Governor Thomas Ridge. While the Commonwealth did not oppose the stay of execution, the Commonwealth did oppose the request for specific counsel. The trial court granted the motion for stay and appointed John DiSantis, Esquire, from the Chester County Conflict Counsel list to represent Appellant. On November 12, 1998, Mr. DiSantis filed an amended PCRA petition on behalf of Appellant. Several continuances were requested by Appellant, and finally, on July 13, 2000, an evidentiary hearing was held. On September 15, 2000, Thomas J. Wagner, Esquire, from the Chester County Conflict Counsel list was appointed to represent Appellant due to Mr. DiSantis' withdrawal from the list. On October 19, 2000, the PCRA court denied relief. Significantly, the PCRA court determined that numerous claims raised in the PCRA petition were previously litigated or waived because they were not supported by any testimony or evidence at the PCRA hearing. The PCRA court did, however, address four claims of trial counsel's alleged ineffectiveness during the penalty phase and two constitutional claims asserted in the petition. On November 16, 2000, Mr. Wagner filed a notice of appeal on behalf of Appellant.

In May of 2000, Christi A. Charpentier, Esquire, entered her appearance on behalf of Appellant. Ms. Charpentier subsequently filed a brief in this Court.

**3.** Here, Appellant's judgment became final, for purposes of the PCRA, on or about April 20, 1998, the date the United States Supreme Court denied certiorari. *Commonwealth v. Yarris,* 557 Pa. 12, 731 A.2d 581 (1999); 42 Pa.C.S. § 9545(b)(3). Accordingly, as this is Appellant's first PCRA petition and because it was filed on May 26, 1998, within one year of the pivotal date, it is considered timely filed.

534

In order to be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S. § 9543(a)(2) and that the issues have not been finally litigated or waived. *Commonwealth v. Morales,* 549 Pa. 400, 701 A.2d 516 (1997). A claim is deemed previously litigated under the PCRA if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2). An allegation is deemed waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b). We further note that, pursuant to *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998), the relaxed waiver rule is no longer applicable to PCRA appeals, and therefore, any claims that have been waived by Appellant are beyond the power of this Court to review under the terms of the PCRA.

In his first issue, Appellant acknowledges this rule of waiver, asserting that to overcome waiver, he must demonstrate PCRA counsel's ineffectiveness in failing to present any of the claims being raised for the first time in this appeal. He cites this Court's decision in *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998) in support of his claim that he is entitled to raise PCRA counsel's alleged ineffectiveness to this Court on appeal from the denial of PCRA relief. He then argues, in very general terms, that PCRA counsel was ineffective in failing to conduct a complete and thorough investigation and in failing to present evidence supporting the claims counsel did raise at the evidentiary hearing.

Generally, new claims are not permitted to be raised on appeal. *See Commonwealth v. Bond,* 572 Pa. 588, 819 A.2d 33 (2002) (finding that claims of trial court error which could have been raised on direct appeal by new counsel or raised in the PCRA court, but were not, are waived). *See also,* Pa. R.A.P. 302(a). However, this Court has consistently held that a defendant in a capital case may challenge the stewardship of

PCRA counsel on appeal to this Court because it is his only opportunity to do so. *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293 (1999); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998). *Accord Commonwealth v. Jones,* 572 Pa. 343, 815 A.2d 598, 609–10 (2002) (Opinion Announcing the Judgment of the Court, Castille, J.) (recognizing the tension between the one-year filing requirements of the PCRA and the judicial rule embraced in *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), "we will not hold that the new claims of PCRA counsel ineffectiveness are unreviewable on this appeal and must be pursued in a second PCRA filing in the court below" because the Commonwealth has not argued that the claims should be time-barred and the issue has not yet been addressed by this Court.).[4] Indeed, in *Albrecht,* we explicitly held that the right to appointed PCRA counsel in a first PCRA petition provided for in Pa.R.Crim.P. 904 requires an enforceable right to effective post-conviction counsel and that, therefore, claims challenging PCRA counsel's steward-ship, raised for the first time in this Court, must be permitted. *Albrecht,* 720 A.2d at 700–01. We explained in *Bond* that a claim that subsequent counsel was ineffective in failing to raise the claims of trial court error does not undo the waiver of that underlying claim; rather, the claim of ineffectiveness itself raises a separate substantive issue. *Bond,* 819 A.2d at 40. We went on to hold, however, that boilerplate assertions of PCRA counsel's ineffectiveness for failing to raise the claims below fail as being undeveloped. *Id.* at 41.

Appellant acknowledges that because he is now represented by counsel other than original PCRA counsel, those issues being raised for the first time to this Court are reviewable only to the extent that they sound in PCRA counsel's ineffec-tiveness. However, aside from his initial boilerplate issue, Appellant does not argue any of his claims under the rubric of PCRA counsel's failings; opting instead to present his numer-

4. We recognize that we abolished the so-called *Hubbard* rule in our decision in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002). *Grant* does not, however, apply in the instant matter because the rule announced in *Grant* had no effect on cases that were currently pending on collateral review on the date *Grant* was filed. *Id.* at 739.

ous issues and sub-issues as if he were on direct appeal. All of the issues raised in his brief are presented and developed either as claims of trial counsel ineffectiveness, trial court error, or prosecutorial misconduct. Prior PCRA counsel's stewardship is mentioned occasionally, *albeit* only as a bald assertion that such counsel was ineffective in failing to raise a particular issue. More often, Appellant simply concludes each argument with a statement to the effect that all prior counsel were ineffective in failing to raise the waived claim presented in that precise argument.

We acknowledge that this Court has denied relief based upon an appellant's failure to develop his/her claims of PCRA counsel's ineffectiveness. *See Commonwealth v. Bond, supra.* Nevertheless, we decline to do so in this case. Subsequent to our decision in *Bond,* this Court has acknowledged that the manner in which to properly layer a claim of ineffective assistance of counsel has not been clear. *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1022 (2003). We have since clarified how a defendant must present his or her claim of layered ineffectiveness. *Id.* Further, as in *Jones, supra,* the Commonwealth here has not forwarded an argument that Appellant's claims of PCRA counsel ineffectiveness are time-barred, nor has it argued that the claims should fail as undeveloped. Moreover, as we demonstrate below, it is apparent that all of Appellant's underlying claims are either waived or without merit; thus, any claim of PCRA counsel ineffectiveness would ultimately fail. Thus, we proceed to examine those issues of ineffectiveness that are properly framed to determine whether there is any arguable merit to the claims of trial counsel ineffectiveness.[5]

5. Initially, we find several of Appellant's claims to have been waived for failure to raise them on direct appeal. Appellant's claims that the prosecutor engaged in numerous acts of misconduct during the penalty phase (Argument V) and that the Commonwealth failed to provide Appellant adequate notice of the grave risk aggravator (Argument VIII) were never raised on direct appeal to this Court and are therefore not reviewable. Similarly, the following claims also were not raised on direct appeal and thus are waived: the trial court erred in instructing the jury on the requirements of 42 Pa.C.S. 9711(e)(8) (Argument X); Appellant's constitutional rights were violated by the trial court's failure

■■■■ We turn now to Appellant's claims of ineffective assistance of counsel. As we explained in *McGill* and expounded upon in *Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651 (2003), review of the issue of ineffectiveness of trial counsel is merely a component of the claim at issue—that challenging the effectiveness of subsequent counsel. Therefore, to demonstrate that a "layered" claim of appellate counsel's ineffectiveness has arguable merit, the petitioner must develop all three prongs of the *Pierce* test as to the ineffectiveness of trial counsel. *McGill*, 832 A.2d at 1022; *Rush*, 838 A.2d at 656.[6] In other words, if a petitioner fails to develop any of the three *Pierce* prongs regarding the underlying issue of trial counsel ineffectiveness, he or she will have failed to establish the arguable merit prong of the claim of subsequent counsels' ineffectiveness. *McGill*, 832 A.2d at 1023; *Rush*, 838 A.2d at 656.

to inform the jury that a life sentence in Pennsylvania means life without parole (Argument XI); and the trial court improperly instructed the jury on the nature and use of aggravating and mitigating factors (Argument XII).

As noted above, in Argument I, Appellant attempts to overcome waiver of the aforementioned claims by baldly asserting the ineffectiveness of PCRA counsel. He also includes a bald statement that all prior counsel were ineffective. With respect to each of the above-referenced claims, Appellant fails to set forth the three prong standard for ineffectiveness established in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), as it relates to the performance of counsel at *any* level of representation. With respect to each of the above-referenced claims, Appellant also sets forth similar boilerplate allegations at the conclusion of each particular issue. Such an undeveloped claim, based upon a boilerplate assertion of all prior counsel's ineffectiveness, cannot convert a claim of trial court error into one of counsel's ineffectiveness. *See Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 940 n. 4 (2001) (finding that the mere tacking on of a sentence stating that all prior counsel were ineffective for failing to raise underlying claims of error does not satisfy Appellant's burden of establishing that he is entitled to post conviction relief on ineffective assistance of counsel claim.).

6. It is well-established that the *Pierce* test requires the PCRA petitioner to demonstrate that: (1) the underlying claim has substantive merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of that counsel's deficient performance. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

■ Pursuant to *McGill* and *Rush,* the first claim of PCRA counsel ineffectiveness involves the issue of whether trial counsel was ineffective for failing to present evidence of co-defendant, Tyrone Green's, pre-trial statement wherein he allegedly verified Appellant's trial defense that the killing was accidental.

Co-defendant Green gave police a statement shortly after the murder detailing his involvement in the robbery and murder. Essentially, he claimed that he ran into Appellant the morning of the murder, and the two discussed committing a robbery in Coatesville. They then picked up co-defendant Troy Davis, and the three proceeded to Coatesville. Along the way, the three formed a plan to rob the Laundromat. According to his statement, Green was supposed to stand at the door of the Laundromat and keep anyone from leaving the scene while Appellant pulled his gun on the owner and demanded the money. Green claimed that he witnessed Appellant and the victim struggle over Appellant's gun and became frightened and ran from the cleaners. He claimed that he heard two shots coming from inside the cleaners after he left. N.T. 1/5/94, pp. 39–43.

Appellant argues that this statement constitutes critical exculpatory evidence insofar as it confirms that there was a struggle over the gun and thus, would have supported Appellant's defense that the killing was accidental. Appellant also claims that the failure to present this statement to the jury directly affected the weight the jury accorded the sole mitigating factor it found during the penalty phase.

Appellant maintains that this statement would have been admissible as a declaration against penal interest, while the Commonwealth refutes this contention, arguing instead that the entirety of this statement would not have been admissible under this exception. We need not address the issue of whether such statement would have been admissible, however, since even assuming it was admissible, Appellant has failed to demonstrate the requisite prejudice necessary to sustain this claim of ineffectiveness. *Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352 (1995)(finding that where it is clear that a

petitioner has failed to meet the prejudice prong, the claim may be dismissed on that basis alone without determination of whether the first two prongs of the ineffectiveness standard have been met). First, with respect to the guilt phase, the statement is not necessarily exculpatory insofar as Green states he was no longer present in the Laundromat when the shots were fired. Similarly, Appellant's claim that the presentation of this statement would have affected the jury's consideration of mitigating factors is also without merit. The jury found as a mitigating factor the following: "events leading up to the fatal shot including the possibility of a struggle." Since, as noted above, Green's statement indicates he was not even present when the fatal shots were fired, we cannot glean how his statement would have altered the jury's consideration given that it already found this particular mitigating factor. Accordingly, Appellant has failed to demonstrate how he was prejudiced by this omission, and his claim of trial counsel ineffectiveness fails, thereby rendering the claim of subsequent counsel's ineffectiveness untenable.

Appellant next contends that trial counsel should have objected to him being forced to wear shackles and handcuffs, which were visible to the jury during the trial. In support of this claim, Appellant recites a discussion held between counsel, the court, and Appellant immediately prior to the jury's return to the courtroom for the sentencing phase of trial, during which counsel for Appellant asks the court if the shackles and handcuffs employed during transportation of Appellant could be removed. The court granted the request. It noted that, although Appellant had given the sheriff's personnel some problems that morning at the prison, he had thus far in the trial not presented any risk.

The Commonwealth submits that Appellant was not shackled during trial and that there is no record support for this claim. A review of the record indicates that the Commonwealth is correct. There is no indication in either the recitation of the record submitted by Appellant nor the actual record itself to support Appellant's contention that he was forced to proceed during either phase of trial in shackles or

handcuffs. *See*, N.T. 10/29/94, 866–68. Accordingly, Appellant has failed to satisfy the arguable merit prong of the *Pierce* test as to trial counsel's ineffectiveness and, therefore, the claim of subsequent counsel's ineffectiveness fails. *Commonwealth v. D'Amato*, 514 Pa. 471, 526 A.2d 300 (1987).

■ Next, Appellant contends that trial counsel was ineffective for failing to object to improper victim impact testimony. In support of this claim, Appellant challenges comments made by four witnesses during the guilt phase of trial which essentially refer to the victim as a "nice person" or a "good man." He also challenges comments made by Kimberly Murray, who was in the Laundromat with her two young children at the time of the murder, which indicate that her one child experienced nightmares and behaved differently following the murder. Appellant claims that the prosecution highlighted this victim impact testimony in both its opening and closing statement by also referring to the victim as a "nice man" and a "gentleman." Finally, Appellant claims that trial counsel compounded this error by himself arguing additional "victim impact evidence" to the jury.

■ Appellant is correct that the capital sentencing scheme in effect at the time of his trial precluded the admission of "victim impact testimony." *Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130, 145 (1996). The comments on which Appellant bases his claim do not, however, constitute "victim impact testimony." Generally, only those statements which describe qualities of the victim and are designed to show the victim's uniqueness as an individual fall within the rubric of "victim impact evidence." *See Commonwealth v. McNeil*, 545 Pa. 42, 679 A.2d 1253, 1259 n. 11 (1996). A review of the record reveals, however, that the challenged comments were, for the most part, unsolicited and, in each instance, were not the focus of the prosecutor's examination of the witness. Moreover, even assuming *arguendo* that any of these comments constituted impermissible "victim impact testimony," those references were so isolated that none of them could be found to have affected the outcome of the proceed-

ings.[7] Accordingly, Appellant's claim of trial counsel ineffectiveness fails. The claim of subsequent counsel's ineffectiveness, therefore, also fails.

Next, Appellant claims that trial counsel was ineffective for failing to move to have portions of Appellant's statement redacted. Specifically, Appellant claims that his statement contains numerous references to the victim being a "white guy" and that since only the degree of guilt was at issue, the race of the victim was not relevant and reference thereto was inflammatory and prejudicial. Appellant submits that trial counsel recognized the potential for racial bias in this case in a pre-trial statement addressed to the court wherein he voiced his concern that any reference to the race of the co-defendants should be redacted. In support of this claim, Appellant cites the United States Supreme Court decision of *Turner v. Murray*, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986).

In *Turner*, a majority of the United States Supreme Court held that where the defendant has been charged with a capital offense and the defendant and the victim are of different races, such a situation amounts to special circumstances allowing the defendant to question the jury regarding possible racial bias. In the instant matter, prospective jurors were, indeed, *voir dired* on the subject of racial bias. *See, e.g.* N.T. 10/18/94, pp. 505, 533, 548. Accordingly, even assuming that Appellant's claim has merit, Appellant has failed to establish the requisite prejudice and thus, his claim of trial counsel ineffectiveness fails. Appellant's claim of subsequent counsel's ineffectiveness also necessarily fails.

Appellant next asserts that the Commonwealth improperly presented expert testimony from Howard Montgomery, a State Police firearms examiner, that, in his opinion, there was a strong likelihood during the crime that a bullet could have ricocheted and struck someone other than the

---

**7.** Additionally, the trial court instructed the jury that the statements and questions of the attorneys do not constitute evidence thereby curing any possible prejudice that may have been caused by the prosecutor's comments. *Commonwealth v. Jones*, 542 Pa. 464, 668 A.2d 491 (1995).

victim.[8] Appellant claims that this testimony was purely
speculative and, thus, that trial counsel was ineffective in
failing to object to this testimony and/or to present expert
testimony to refute the Commonwealth's expert. He adds
that while PCRA counsel did raise this claim below and did
question trial counsel regarding his failure to obtain an expert,
PCRA counsel was, himself, ineffective in not then presenting
an expert to refute this theory. For the following reasons,
Appellant's claims fail.

First, while Appellant claims that his trial counsel should
have called an expert to refute Mr. Montgomery's testimony,
he fails to allege that such a witness was available. Indeed,
the record reveals that Appellant was granted a continuance
during the PCRA proceedings to obtain an expert, but that he
was unsuccessful in obtaining any such expert. Accordingly,
Appellant cannot establish that his claim bears merit. *Com-
monwealth v. Morales*, 549 Pa. 400, 701 A.2d 516 (1997)
(holding that in order to establish counsel ineffectiveness for
failing to call a particular witness, the petitioner must estab-
lish (1) that the witness existed; (2) that the witness was
available; (3) that counsel knew or should have known about
the witness; (4) that the witness was prepared to cooperate
and testify at trial; and (5) that the absence of the testimony
prejudiced him).

Furthermore, trial counsel testified at the PCRA hearing
that Mr. Montgomery's testimony was a matter of common
sense and logic and that had he chosen to refute that testimo-

---

**8.** Specifically, Mr. Montgomery testified as follows:
Q: Could you tell us what ricochet is?
A: A ricochet is a—basically, a projectile or a bullet that would strike
an object, a glancing blow, and then ricochet from that object and take
a different direction off of a surface, this is what we call a ricochet.
Q: And from your observations of the interior of the Laundermat [sic],
was there surfaces in there that ricochet was potentially capable?
A: Well, yes, many surfaces. You had metal washing machines, you
had one wall, you had metal dryers, big huge dryers. A firearm
discharged randomly in this particular establishment, there was a good
chance of a ricochet bouncing off a washing machine, off a wall, off a
dr[y]er, going out the front window, or striking someone in the estab-
lishment at the time.
N.T. 10/25/94, 367–368.

ny, he believed the jury would then discredit all of the defense evidence. Given the record evidence, counsel's strategy was reasonable. *See, Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987) (stating that in reviewing counsel's stewardship, we do not employ a hindsight evaluation of the record to determine whether other alternatives were more reasonable; rather, counsel will be deemed effective so long as the course chosen by counsel had some reasonable basis designed to effectuate his client's interests). Accordingly, Appellant has failed to establish this claim of trial counsel ineffectiveness. Therefore, his further claim that PCRA counsel was ineffective in failing to call a ballistics expert at the PCRA stage also fails.

 Appellant next asserts that trial counsel was ineffective in failing to investigate and present substantial mitigating evidence. Appellant claims that a thorough investigation into his childhood would have revealed that he was emotionally and physically abused during his childhood, that he lived in a substandard housing environment, and that he suffered seizures as a young child and a head injury at the age of twelve. Appellant maintains that there exists both school and medical records that document this background. He claims that trial counsel failed to perform even rudimentary checks into his background to discover these records and/or information; records and information which he claims a mental health expert would have used to explain the lasting effects such abuse would have on an individual.[9] The Commonwealth argues that

9. In his initial brief to this Court, Appellant claimed that Dr. Carol Armstrong conducted certain psychological testing which indicated that as a result of Appellant's devastating childhood, he suffers from a cognitive disorder not otherwise specified. Appellant does not, however, append to his brief any report of Dr. Armstrong. Instead, appended to his reply brief is an undated "declaration" of Dr. Carol Armstrong which details her alleged findings. Even assuming *arguendo* that we were to consider the declaration of Dr. Armstrong, Appellant still has not established his claim of ineffectiveness insofar as he fails to demonstrate that he ever informed counsel of this alleged childhood abuse or that counsel had any notice whatsoever of this alleged childhood abuse after having spoken at various times with not only Appellant but also his family and friends. *Commonwealth v. Bracey,* 568 Pa. 264, 795 A.2d 935 (2001); *see also, Commonwealth v. Basemore,* 560 Pa. 258, 744

this claim, or at least a portion of this claim, was previously litigated on direct appeal when Appellant challenged trial counsel's failure to present evidence concerning Appellant's employment and educational history and his failure to call five particular witnesses to testify to Appellant's good character. As the instant claim is yet another challenge to trial counsel's alleged failings in presenting mitigating evidence, it arguably has been previously litigated. However, to the extent that it has not been previously litigated, the claim fails the arguable merit prong of *Pierce* for several reasons.

First, Appellant's claims amount to little more than bald assertions. While he maintains that there are records and/or "affidavits" to support these assertions, the documents submitted do not support his contention.[10] For example, he appends an "affidavit" from his initial trial counsel who states that Dr. Sadoff prepared a written report, the basis of which supported a need for psychological testing. However, Appellant does not set forth the contents of that report nor does he offer a copy thereof. Additionally, the medical records which Appellant appends are, for the most part, illegible or contain no reference to any underlying cognitive or mental deficiency. And while he appends "affidavits" from family members and/or

A.2d 717, 735 (2000) (counsel cannot be found ineffective for failing to pursue a particular mitigating factor where, despite a reasonable investigation by counsel, counsel was not put on notice of any such mitigating evidence); *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373, 383 (1986) (reasonableness of counsel's investigation depends critically upon information supplied by the defendant).

**10.** Each of the "affidavits" appended to Appellant's brief are titled "Declaration and Affidavit" or "Affidavit/Declaration." In his argument, Appellant refers to these statements, for the most part, as simply "affidavits." However, none of these statements are properly characterized as "affidavits" since none of them have been sworn to by the declarant before an officer authorized to administer oaths. See 1 Pa.C.S. § 1991 ("Affidavit" is defined as "[a] statement in writing of a fact or facts signed by the party making it, sworn to or affirmed before an officer authorized by the laws of this Commonwealth to take acknowledgments of deeds, or authorized to administer oaths, or before the particular officer or individual designated by law as the one before whom it is to or may be taken, and officially certified to in the case of an officer under his seal of office.") However, as noted *infra*, even assuming the truth of the declarations made in these "affidavits," Appellant's claim of ineffective assistance of counsel fails.

friends which indicate that Appellant's parents were abusive towards each other as well as towards Appellant and his siblings, the information conveyed, while perhaps disheartening in no way demonstrates that Appellant suffered any mental deficiencies as a result of this alleged abuse.[11]

Moreover, even assuming that such reports exist and/or that Appellant did, indeed, suffer a traumatic childhood, Appellant has not demonstrated that his prior counsels' failure to discover such information was a result of an unreasonable investigation by counsel into Appellant's background. *See Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 944 (2001) (finding that counsel will not be deemed ineffective for failing to present evidence of alleged childhood abuse where neither the defendant nor his family informed counsel of any such abuse); *see also Commonwealth v. Malloy*, 579 Pa. 425, 856 A.2d 767 (2004) (Opinion by Castille, J.) (counsel has a duty to perform a reasonable investigation into a defendant's background in an effort to discover potential mitigating evidence, but the reasonableness of any such investigation may be dependent upon the information supplied to counsel).[12] As the following dis-

11. The Dissent's position that the assertions now being presented to this Court are sufficient to raise factual questions pertaining to prior PCRA counsel's stewardship is perplexing. Nowhere does Appellant even assert facts specific to PCRA counsel's stewardship. Indeed, aside from the boilerplate catch-all argument that all prior counsel were ineffective, which is found in the final paragraph of this particular argument, the focus of this entire argument is trial counsel's actions. Moreover, direct appeal counsel had already vehemently challenged trial counsel's alleged failure to investigate and present potential mitigating evidence and, indeed, a significant portion of the remand hearing directed by this Court focused specifically on that aspect of trial counsel's preparation and investigation. Additionally, Appellant was asked at the remand hearing to discuss those areas he would have testified to had he testified at the penalty hearing. As for his background, Appellant spoke of his educational achievements, his employment, his caring relationship with his children, his relationship with his brother and his relationship with his neighbors. Appellant did not, however, mention any history of abuse, neglect or trauma. To attribute such significance to Appellant's bald assertions as does the Dissent, at this stage of the proceedings and under these facts, not only ignores the pleading and proving requirements of the PCRA, but also renders meaningless the well-established standards applied to a claim of ineffectiveness.

12. The Dissent cites *Commonwealth v. Malloy*, 579 Pa. 425, 856 A.2d 767 (2004), to support its position that we have improperly focused our

cussion evidences, Appellant's trial counsel did speak with

inquiry on the actions of Appellant in this regard as opposed to the actions of defense counsel in investigating this matter. However, a full reading of *Malloy* teaches that in assessing the reasonableness of counsel's investigation, where as here, counsel met with the appellant, his family members and/or friends, those persons failure to reveal any such alleged childhood trauma or significant history is, indeed, relevant to our inquiry.

It is well-settled that the reasonableness of a failure to investigate and present certain mitigation evidence can depend upon the information given to counsel by the defendant in the course of counsel's investigation. 'Thus, assuming a reasonable investigation, where there is no notice to counsel of particular mitigating evidence, he cannot be held ineffective of[sic] failing to pursue it.' However, it is also settled that 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'

In this case, it is clear that the failure of counsel to pursue mitigation evidence of his client's background was not based upon strategy or any other objectively reasonable factor. The testimony at the remand hearing demonstrated that counsel failed to so much as conduct a cursory review of appellant's background. This is not a case where trial counsel had attempted to elicit relevant mitigation information from his client and family members, only to have childhood abuse, family problems, or other potential mitigation evidence within their knowledge not be mentioned. *Contrast Bond*, 819 A.2d at 47 (noting that trial counsel met with appellant and family members on numerous occasions and they failed to reveal childhood trauma to trial counsel). Indeed, the testimony below suggests that counsel did not pursue this tactic at all:

Q: Did you ever sit down with him and, you know, say if we get to the point where they are seeking the death penalty against you, we ought to try to get some people in to say good things about you. Is your mother around, is your grandmother around, do you have any other relatives to come down her and say you are a nice guy or you were a nice guy and give us some more background? Did you ever talk·to him at all about witnesses like that?

A: I don't recall doing that.

N.T. 10/23/01 at 43. Counsel's inaction was not caused by appellant and his family's failure to cooperate and supply such information. Although counsel cannot be ineffective for failing to investigate evidence which he had no reason to know existed, counsel still has an obligation to conduct a reasonable investigation to uncover such information.

*Malloy*, 856 A.2d at 788 (citations omitted). Unlike trial counsel in *Malloy*, Appellant's trial counsel did not abrogate his duty to present penalty phase evidence of mitigation, but rather spoke with Appellant's family and friends as well as Appellant in an attempt to get information regarding Appellant's background and then presented testimony that portrayed Appellant as a good and caring person, a proposition consistent with the theory espoused at trial that the shooting was accidental.

Appellant, his family and certain friends for the express purpose of ascertaining potential mitigating evidence, yet he was never informed of any alleged mental condition or of any abuse allegedly suffered by Appellant as a child.

Furthermore, trial counsel testified at length during the remand hearing regarding his efforts at ascertaining potential mitigating evidence and also testified at the PCRA hearing regarding his efforts.[13] Specifically, he testified that he discussed the penalty phase of the trial with Appellant, explained that the Commonwealth would be presenting aggravating factors, and informed Appellant that he could present mitigating factors. Additionally, counsel testified that Appellant remained steadfast in his refusal to testify, even after he was advised by counsel that it would be in his best interest to testify at the penalty phase. Indeed, Appellant informed counsel that he did not want his mother or any of the other witnesses who counsel had contacted to testify as to his good character. Notwithstanding Appellant's objections, trial counsel chose to call Appellant's mother and the mother of one of his children, both of whom essentially testified that Appellant had a "good heart" and was a caring person. Trial counsel testified that he chose not to call other witnesses that he had spoken with because of Appellant's convictions that no witnesses be called to testify, and because he believed that Appellant's mother would be most persuasive in the eyes of the jury. Significantly, Appellant takes no issue with the fact that during the penalty hearing, at the request of defense counsel, the trial court colloquied Appellant respecting his desire not to testify. Under these circumstances, we conclude that Appellant has failed to demonstrate that his counsel was ineffective when he essentially followed Appellant's wishes in not presenting additional mitigation evidence. Having failed to satisfy the *Pierce* test as to trial counsel's performance,

13. The testimony on this point was more extensive at the remand hearing since, as noted previously in this opinion, Appellant's direct appeal counsel there specifically challenged trial counsel's failure to present as mitigation evidence Appellant's educational and employment history and counsel's failure to present certain witnesses to testify to Appellant's good character.

Appellant's claim that PCRA counsel was ineffective is similarly without merit.

Accordingly, we affirm the order of the PCRA court.[14]

Justice CASTILLE files a concurring opinion.

Justice NIGRO concurs in the result.

Justice SAYLOR files a dissenting opinion.

Justice CASTILLE concurring.

I join the Majority Opinion, but write separately to further address two points.

First, as the Majority notes, appellant is represented by new counsel upon this Post Conviction Relief Act ("PCRA")[1] appeal, and counsel raises new claims which are cognizable under the Act (if at all) only to the extent that they sound in the ineffective assistance of previous PCRA counsel.[2] In support of its determination to reach the merits of these new claims, the Majority cites, among other authorities, this author's Opinion Announcing the Judgment of the Court in *Commonwealth v. Jones,* 572 Pa. 343, 815 A.2d 598, 609–10 (2002) (Castille, J., joined by Eakin, J., with four Justices concurring in the result and one Justice Concurring and Dissenting). In *Jones,* I noted that entertaining entirely new claims on PCRA appeal arguably circumvents both the PCRA's serial petition restriction and its one-year time-bar restriction. *See* 42 Pa.C.S. § 9545(b). After noting this open question, I proceeded to the merits for the following reasons:

> The claims of PCRA counsel ineffectiveness here ... were, with but two exceptions,[ ] not raised in the original or amended PCRA petition that is the subject of this appeal. Nor are the new claims elaborations, extensions, or deriva-

---

**14.** The Prothonotary of the Supreme Court is directed to transmit a complete record of this case to the Governor within ninety days of our decision in accordance with 42 Pa.C.S. § 9711(i).

**1.** 42 Pa.C.S. § 9541 *et seq.*

**2.** Since appellant had no federal right to counsel at the PCRA stage, his claims of ineffective assistance of previous PCRA counsel sound exclusively under Pennsylvania law.

tions of those raised in the petitions below. Instead, appellant's new and distinct claims were first raised ... well over a year after appellant's conviction became final in 1996. As a PCRA matter, then, these issues, not having been raised in the initial and amended petitions below, should properly be the subject of a second PCRA petition, which would be subject to the time limitation and serial petition restrictions contained in § 9545(b) of the PCRA. By reaching the merits of brand new claims never presented in the PCRA petition that was actually filed and is at issue in this appeal, this Court arguably employs the *Hubbard* doctrine[3] in an unintended and improper fashion—*i.e.,* to provide an end-around the General Assembly's unequivocal and jurisdictional restrictions upon serial post-conviction petitions. *See United States v. Duffus,* 174 F.3d 333, 336–38 (3d Cir.1999) (district court did not err in denying leave to amend federal habeas petition to add new claim or theory after one-year federal statute of limitations governing habeas petitions had expired; permitting such amendment would be contrary to very policy of limitations period). *See also [Commonwealth v.] Pursell II,* 561 Pa. 214, 749 A.2d [911, 915–16 (2000)] ("[W]hile layered claims of counsel's ineffectiveness may avoid the waiver restrictions in the PCRA, we have repeatedly held that claims of ineffective assistance of counsel do *not* automatically qualify pursuant to the exceptions to the one-year time limitation provided in 42 Pa.C.S. § 9545(b)(1)(i)-(iii).") (collecting cases).

In the past, of course, this Court has had to consider the continuing viability of judicial rules that find themselves in separation of powers tension with the governing terms of the PCRA. *[Commonwealth v.] Albrecht,* 554 Pa. 31, 720 A.2d [693, 700 (1998)] (holding that relaxed waiver is no longer viable on PCRA appeals because, *inter alia,* "application of the doctrine of relaxed waiver in a PCRA proceeding runs afoul of the very terms of the [PCRA], which excludes waived claims from the class of cognizable PCRA claims").

**3.** *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), *abrogated in Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002).

Having noted the tension, however, we will not hold that the new claims of PCRA counsel ineffectiveness are unreviewable on this appeal and must be pursued in a second PCRA filing in the court below. The Commonwealth has not forwarded an argument that the claims should be deemed time-barred and, although the issue may prove to have jurisdictional consequences, that point is not yet settled and there may be more to be said on the question, on both sides. Because, as we demonstrate below, it is apparent that appellant's new claims of PCRA counsel ineffectiveness must fail on the merits, and that alone is enough to decide this appeal, we note this pending issue without deciding it.

*Jones*, 815 A.2d at 610 (footnote omitted).

The case *sub judice* was briefed before *Jones* was decided and, as the Majority notes, it is in the same litigation posture as *Jones: i.e.*, there is no argument forwarded by the Commonwealth that entertaining the new claims wrongly subverts the PCRA's time and serial petition restrictions. In addition, the Majority ultimately denies relief on the claims presented. The question which was noted and deferred in *Jones*, thus, remains open and deferred, and today's Majority Opinion should not be read as having decided that new claims of PCRA counsel ineffectiveness, raised for the first time on PCRA appeal, are not subject to the restrictions of the PCRA.

Second, in discussing appellant's layered claim of ineffective assistance of counsel respecting penalty phase mitigation evidence, the Majority Opinion accurately notes that what appellant calls "affidavits" are, in point of fact, merely "declarations" by various persons, none of which have been sworn to by the declarant before an officer authorized to administer oaths. As I noted in my Concurring Opinion in *Commonwealth v. Brown*, 582 Pa. 461, 872 A.2d 1139 (2005), J–70–2002, I believe that there is a significant distinction between a sworn affidavit, which is contemplated under this Court's Criminal Rules governing PCRA practice, and a.mere unsworn declaration of a witness. Even assuming the truth of such questionable pleadings for purposes of decision, the claim of PCRA counsel ineffectiveness fails as a matter of law.

Justice SAYLOR dissenting.

I respectfully dissent, as I believe that the declarations and briefs that Appellant's present counsel has submitted in this appeal are sufficient to raise factual questions pertaining to the claim that prior post-conviction counsel was ineffective in failing to litigate a challenge to the sentence of death deriving from the absence of life-history and mental-health mitigation evidence before the sentencing jury. Accordingly, I would remand for a post-conviction hearing on this claim.

Initially, the majority recognizes that a remand is the appropriate procedure for consideration of a properly supported claim of ineffective assistance of post-conviction counsel. *See* Majority Opinion at 534–35, 872 A.2d at 1182. Further, it indicates that a remand will not be withheld based on Appellant's failure to develop sufficiently his claims of post-conviction counsel's ineffectiveness, since, as of the time that Appellant's brief was filed, the requirements for layering ineffectiveness claims were unclear. *See id.* at 535–37, 872 A.2d at 1183. Nevertheless, later in its opinion, the majority appears to alter course, relying on an asserted lack of sufficient development of the layered ineffectiveness dynamic to bolster its position that a remand is unnecessary. *See, e.g.,* Majority Opinion, at 545 n. 11, 872 A.2d at 1188 n. 11.

To the extent that the majority's treatment is internally inconsistent, I cannot support it; moreover, I disagree that Appellant's claim is baldly asserted. In this regard, Appellant's brief is framed from its opening around the notion that post-conviction counsel was ineffective:

[Appellant] was denied his right to the effective assistance of his initial PCRA counsel ... where counsel failed to conduct a complete and thorough investigation; and where counsel failed to present evidence supporting those claims counsel did raise at an evidentiary hearing. Accordingly, as described below, the PCRA court never had for its consideration the evidence readily available that established substantial and compelling mitigation evidence that should have

been presented at the time of trial and never considered substantial and compelling record-based claims for relief.

\* \* \*

The record in this case unquestionably establishes that his post-conviction counsel was ineffective. As set forth more fully below, PCRA counsel failed to discover, investigate and litigate both non-record background and mental health claims as well as record-based claims requiring relief and the resulting dismissal of [Appellant's] PCRA petition, resulting in an invalid conviction and death sentence[,] prejudiced [Appellant].

Constitutional effective representation requires, at a minimum, "an independent review of the record by competent counsel ..." *Pennsylvania v. Finley,* 481 U.S. 551, 558, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). As set forth below, there existed substantial and compelling record-based claims for relief directly challenging the validity of [Appellant's] ... death sentence. Nevertheless, prior counsel failed to raise or litigate these issues.

Moreover, also as set forth more fully below, prior counsel failed to adequately investigate [Appellant's] background and history and provide that critical mitigating evidence to mental health experts in order to identify significant cognitive, emotional and mental impairments that should have been presented in [Appellant's] trial and sentencing hearing. Finally, the prejudice is clear on the record. Appellant was denied post-conviction review of meritorious claims challenging his invalid conviction and sentence. Counsel's failure to investigate potential claims and his failure to present those claims to this Court deprived [Appellant] of his rights to meaningful, counseled PCRA review of his conviction and sentence....

Initial Brief of Appellant, at 6–7. Twenty-two pages of the brief are then dedicated to filling out the above outline by developing Appellant's position as to why the asserted life-history and mental health evidence would have presented a substantially better case for imposition of a life sentence as opposed to death, and why the proffered evidence was avail-

able on reasonable investigation. The argument is advanced via substantial references to the trial, post-trial, and PCRA record, the declarations furnished on appellate post-conviction review, and relevant Pennsylvania and United States Supreme Court precedent. *See id.* at 49–71.[1]

On the merits of the underlying claim, much of the majority's analysis centers on its repeated assertion that Appellant never informed his trial counsel of the alleged life-history and mental-health mitigation, and never raised the issue of his own accord in a post-trial evidentiary hearing. *See* Majority Opinion at 543–44 n. 9, 545 n. 11, 547–48, 872 A.2d at 1187 n. 9, 1188 n. 11, 1190. Although this Court continues on occasion to employ this and similar reasoning, it should by now be regarded as well established that the proper focus of the inquiry is on the investigation that counsel performed relative to such mitigation, and not on the actions that the capital defendant may or may not have taken on or of his own initiative. *See Wiggins v. Smith,* 539 U.S. 510, 525–26, 123 S.Ct. 2527, 2537–38, 156 L.Ed.2d 471 (2003) (discussing capital counsel's obligation to "discover all reasonably available mitigating evidence" and the directing focus of the ineffectiveness inquiry to counsel's investigation); *Commonwealth v. Malloy,* 579 Pa. 425, 459–61, 856 A.2d 767, 788 (2004) ("The onus is not upon a criminal defendant to identify what types of evidence may be relevant and require development and pursuit. Counsel's duty is to discovery such evidence through his own efforts, including pointed questioning of his client.");[2] *Commonwealth v. Basemore,* 560 Pa. 258, 290, 744 A.2d 717, 735 (2000) ("Obviously ... different light falls upon counsel's perform-

1. As concerns the stewardship of PCRA counsel, it is noteworthy that, in the post-conviction evidentiary hearing, counsel developed a single issue on the record, namely, the claim that trial counsel was ineffective for failing to present expert testimony to rebut the Commonwealth's ricochet theory supporting the grave risk aggravator. As the majority notes, however, PCRA counsel presented no expert evidence to support that claim. Thus, he advanced a position that had no possibility of success, since he offered no attempt to establish prejudice, an essential component of an ineffectiveness claim.

2. The majority's responsive effort to distinguish *Malloy* on its facts, *see* Majority Opinion at 545–46 n. 12, 872 A.2d at 1189 n. 12 does not speak to the straightforward legal proposition for which it is cited here.

ance depending upon whether he asked and was not told, or he did not ask and therefore was not told." (citing *Strickland v. Washington,* 466 U.S. 668, 690–91, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984))). Thus, the clear and simple question implicated by Appellant's claim is whether *counsel* at trial, on direct appeal, and at the post-conviction stage ever *inquired* into the relevant mental-health and life-history aspects of mitigation. *Accord Wiggins,* 539 U.S. at 525–26, 123 S.Ct. at 2537–38 (again, framing the relevant inquiry in terms of *counsel's* duties, and not obligations on the part of the capital defendant himself). This, however, is a question that the majority never undertakes to address.[3]

On the record before this Court, nothing supports a conclusion that trial counsel conducted any investigation into mental-health and explanatory-type, life-history mitigation.[4] Indeed, when specifically asked what avenues he explored with his client, trial counsel responded solely by way of reference to the character-affirmation line of inquiry. *See* N.T., October 27, 1995, at 152–53 (reflecting that counsel's response to the question, "What mitigating evidence did you describe to [Appellant], as a defense attorney would put on or would like to inquire about to put on for him at the death penalty stage?" was merely to discuss Appellant's employment history).[5]

3. Indeed, the majority's merits analysis suggests that it will accept that counsel's investigation into *some* aspects of potential mitigation obviates any further duty to conduct a thorough investigation into *all* reasonably-available aspects. Such reasoning, however, contravenes prevailing United States Supreme Court precedent. *See Wiggins,* 539 U.S. at 525, 123 S.Ct. at 2537 (describing counsel's obligation to "discover *all* reasonably available mitigating evidence" (emphasis added)) (quoting ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF COUNSEL IN DEATH PENALTY CASES, § 11.4.1(C), p. 93 (1989)); *see also Williams v. Taylor,* 529 U.S. 362, 396, 120 S.Ct. 1495, 1515, 146 L.Ed.2d 389 (2000) (explaining counsel's duty to thoroughly investigate a defendant's background).

4. *See generally Allen v. Woodford,* 366 F.3d 823, 850–51 (9th Cir.2004) (distinguishing between character-based and explanatory-type mitigation, the latter of which is evidence, such as a history of deprivation and child abuse, that tends to afford some context to the defendant's criminal conduct).

5. To the extent that the majority relies on Appellant's expression at a colloquy immediately preceding the penalty phase of trial to the effect

Furthermore, there seems to me to be fairly widespread consensus that the sort of mental-health and explanatory-type life-history mitigation evidence presently proffered by Appellant can serve as effective mitigation. *See generally Wiggins,* 539 U.S. at 510, 123 S.Ct. at 2542; *Williams,* 529 U.S. at 396, 120 S.Ct. at 1514–15; *Allen,* 366 F.3d at 850–51 ("Defense counsel's use of mitigation evidence to complete, deepen, or contextualize the picture of the defendant presented by the prosecution can be crucial[.]"); *People v. Coleman,* 168 Ill.2d 509, 214 Ill.Dec. 212, 660 N.E.2d 919, 934 (1995) ("We acknowledge the critical importance of a defendant's background and mental health to the sentencing decision."). The majority's

that he did not wish to present witnesses, *see* Majority Opinion at 547–48, 872 A.2d at 1190, it should be noted that Appellant retracted this position on the trial record immediately after having asserted it. *See* N.T., October 28, 1994, at 893 (reflecting trial counsel's representation, "Your Honor, my client, as a result of having a discussion with him, he has changed his position with regards to having his witnesses testify"). Additionally, counsel confirmed on the record that ultimately he, and not Appellant, made the decisions concerning what witnesses to call at the penalty phase. *See* N.T., October 27, 1995, at 173 (reflecting counsel's affirmative response to the question, "Other than putting [Appellant] on the stand, which he controlled, you made the decisions, vis-à-vis, the other people?").

The majority also discounts the attestation of Appellant's initial trial counsel that Appellant was examined by a psychiatrist, who recommended a psychological evaluation, on the basis that the report was not included in Appellant's submission to this Court. *See* Majority Opinion at 543–45, 872 A.2d at 1188. In my view, however, the attorney attestation is sufficient to raise a factual issue, particularly since the report is merely referenced in terms of the constructive notice accruing to substitute counsel that mental health issues were potentially implicated.

Additionally, the majority faults Appellant for not furnishing the declaration of the psychologist who present counsel commissioned to examine Appellant with his initial submission. *See* Majority Opinion at 543 n. 9, 872 A.2d at 1187 n. 9. This Court, however, has previously recognized the difficulties facing substitute counsel on appeal in terms of developing non-record claims. *See, e.g., Commonwealth v. Grant,* 572 Pa. 48, 66, 813 A.2d 726, 737 (2002). Appellant's initial submission indicated that the expert had been retained, and the declaration reached this Court before the case was submitted for its review. Therefore, I would not exclude the psychologist's declaration from consideration. (To the extent that the majority is concerned that the declaration is undated, it was obviously prepared between the examination conducted on August 27, 2001, and the filing of Appellant's reply brief on January 16, 2002.)

characterization of Appellant's proffer of evidence that he and his mother were regularly and severely abused by the men in the household as "perhaps disheartening" does not eliminate the potentially mitigating effect of the evidence, to the extent that it would be believed by a fact finder. Thus, in my view, the essential inquiry is properly accomplished, in the first instance, by the PCRA court, which is best suited to sort through the credibility issues and make the necessary assessment of counsel's stewardship on the basis of concrete findings as to the actual and required scope of the investigations, as well as the weight of any reasonably available mitigation evidence that was not pursued, in comparison to that which was offered at trial.[6]

---

**6.** Finally, on the application of the previous litigation doctrine, the majority does not state a specific conclusion as to whether it believes that the mitigation-related issue is barred. It is my position, however, that Appellant's claim is not foreclosed by the previous litigation doctrine, since Appellant seeks to offer previously unadduced evidence on mitigation theories that were not asserted at trial, on direct appeal, or on post-conviction review. *Accord Commonwealth v. Moore*, 580 Pa. 279, 295 n. 5, 860 A.2d 88, 98 n. 5 (2004) (citing *Commonwealth v. Miller*, 560 Pa. 500, 746 A.2d 592 (2000), for the proposition that "where claim involving evidence involves other previously unchallenged evidence, claim was not previously litigated and merits will be reached"). Moreover, this Court's reasoning in rejecting the mitigation-based claims on direct appeal (which were predicated on the failure to adduce education, employment and positive-character evidence) centered on a discrete evaluation of the potential impact of each form of evidence. *See Commonwealth v. Hall*, 549 Pa. 269, 295–301, 701 A.2d 190, 203–06 (1997). Therefore, the Court's reasoning on direct appeal does not answer the claim presently asserted, which concerns the alleged failure to adduce available mental-health and explanatory-type, life-history mitigation evidence. *Compare Commonwealth v. Uderra*, 580 Pa. 492, 523–26, 862 A.2d 74, 93–94 (2004) (reasoning that a mitigation-based claim was previously litigated where the reasoning on direct appeal, while perhaps not shared by all Justices, fully answered the claim presented at the post-conviction stage).