J-S49035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                             :             PENNSYLVANIA
                                             :
               v.                           :
                                           :
                                         :
TIMOTHY BALDWIN                   :
                                         :
            Appellant            :     No. 353 MDA 2018

Appeal from the PCRA Order January 22, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0000769-2014

BEFORE:    SHOGAN, J., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:           **FILED AUGUST 30, 2018**

Appellant Timothy Baldwin appeals from the Order entered in the Court

of Common Pleas of Lancaster County on January 22, 2018, denying his first

petition filed pursuant to the Post Conviction Relief Act (PCRA).[1] We affirm.

A prior panel of this Court reiterated the trial court's summary of the

factual and procedural history of this case as follows:

> On October 26, 2013, Detective [Roland] Breault was
> investigating a report of shots fired in the 500 block of East
> Strawberry Street, Lancaster, PA. Eventually, Kyle Baldwin was
> identified as a suspect; he was ultimately arrested and charged
> with discharge of a firearm into an occupied structure and
> recklessly endangering another person. On October 28, 2013,
> Detective Breault spoke to the victims of that incident; the victims
> informed Detective Breault that "within two days after the
> incident, three black males had approached [him] at his residence
> and had made comments to him about it." Detective Breault
> testified that the "main part that really stuck was one of the
> individuals had commented that we watch your wife walk to work

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

---

\*    Former Justice specially assigned to the Superior Court.

everyday and that they're up there just to make money." Detective Breault began an investigation to identify the three black males who made those comments to the victims. Based on his investigation, Detective Breault prepared a photo array including eight similarly featured individuals; [Appellant] was one of the individuals in the photo array. The victim positively identified [Appellant] as the person who had approached the victim and made comments to him. A week later, Detective Breault received information that [Appellant] had parked his vehicle in front of the victim's residence and stood in front of the residence for a period of time. The victim called police, but [Appellant] was gone by the time officers arrived. On December 6, 2013, Detective Breault received approval to file charges against [Appellant] for intimidation of a victim or witness, which is graded as a [third-degree felony], based on the fact that the underlying charge was a discharge of a firearm into an occupied structure. The charges were filed before the issuing authority on December 19, 2013.

Detective Breault informed the other patrol officers that [Appellant] was a suspect in an intimidation related to the shooting of October 26, 2013, and that Detective Breault would be preparing charges and obtaining a warrant. Officer [J.] Hatfield was one of the patrol officers informed before going out on duty and he saw a memorandum that included a picture of [Appellant]. Officer Hatfield believed that there was an actual warrant out for [Appellant's] arrest and that [Appellant] was actually still out and not arrested on that warrant. On December 18, 2013, Officer Hatfield was on duty when he observed a vehicle traveling east on West Strawberry Street towards Vine Street; Officer Hatfield ran the registration tag on the vehicle, which [indicated] [Appellant] was the registered owner. Officer Hatfield asked over the radio if [Appellant] was still wanted on the warrant; Officer Weaver[1] and Detective Breault advised [Officer Hatfield] that the warrant was still active. As the vehicle turned left, Officer Hatfield observed the driver of the vehicle; Officer Hatfield indicated [that] he believed [Appellant] was operating the vehicle. Detective Breault advised Officer Hatfield that if Officer Hatfield stopped [Appellant], then Officer Hatfield should take [Appellant] into custody, as Detective Breault had charges prepared for him; no warrant had been obtained at that time. Officer Hatfield called for other officers and they conducted a felony stop. Three occupants were in the car; [Appellant] was called out first and [was] escorted [] back to the police vehicles. Officer [Jared] Snader handcuffed [Appellant] and

- 2 -

transported him from the scene.

Before transporting [Baldwin], Officer Snader searched [Appellant] at the scene, searching his pockets and conducting a pat-down for weapons; Officer Snader found $770 in [Appellant's] pockets. During booking, [Appellant] was required to remove his shoes; upon removal, Officer Snader found that [Appellant's] pants had drawstrings at the bottom and [Appellant's] right pant leg was tucked into his boot and the drawstring was tight at the bottom. After releasing the drawstrings, Officer Snader found a plastic sandwich bag that contained sixty-nine (69) smaller bags of heroin and thirty-six (36) bags of crack cocaine. No paraphernalia related to the heroin or cocaine was found on [Appellant]. [Appellant] did not present any characteristics of someone who is under the influence or addicted to heroin or cocaine. The narcotics were sent to the Pennsylvania State Police Harrisburg Regional Crime Laboratory, where it was confirmed that the substances were, in fact, heroin and cocaine.

[Appellant] was charged with [PWID-heroin and PWID-cocaine]. On April 14, 2014, [Appellant] filed a motion to suppress evidence and a suppression hearing was held on October 27, 2014. The suppression motion was denied based on the [trial court's] findings that Detective Breault had probable cause to arrest [Appellant] as of December 6, 2013, for felony charges of intimidation of a victim and that probable cause was transferrable to Officer Hatfield, particularly when Officer Hatfield received the information both in memo form before going on duty and by personal contact via radio with Detective Breault prior to the stop. A stipulated bench trial followed the suppression hearing. The only additional testimony came from the forensic scientist who tested and confirmed the narcotics and from Officer Thomas Ginder, a member of the Selective Enforcement Unit, who testified that based on the amount of drugs, the presence of a significant amount of money, and the lack of paraphernalia, he believed the narcotics were possessed with the intent to deliver, as opposed to personal use. The [trial court] found [Appellant] guilty of both charges. A pre-sentence investigation was ordered.

On January 15, 2015, [Appellant] was sentenced to an aggregate sentence of ten (10) to fifty (50) years; at Count 1 [PWID-cocaine, Appellant] received a sentence of five (5) to twenty (20) years and at Count 2 [PWID-heroin, Appellant] received a consecutive sentence of five (5) to thirty (30) years. [Baldwin's] sentencing

guidelines indicated the standard range for the charge of [PWID-heroin] was 24-30 months; the standard range for the charge of [PWID-cocaine] was 27-32 months. [Appellant] had a prior record of felony drug charges, which increased his maximum penalty for the heroin charge to thirty (30) years and for the cocaine charge to twenty (20) years. At sentencing, the Commonwealth pointed out [Appellant's] lack of verifiable work history in contrast to the leisure activities [Appellant] reported in his pre-sentence investigation, such as riding four-wheelers and vacationing.

* * *

On January 23, 2015, [Appellant] filed a post-sentence motion to reconsider and modify sentence, claiming the imposition of the statutory maximum sentence for each count to run consecutively to each other [ ] was unreasonable and that the sentencing judge improperly considered [Appellant's] prior record, as it was already factored into the sentencing guidelines. After giving the Commonwealth the opportunity to respond, the [trial court] denied [Appellant's] post-sentence motion on February 2, 2015.

___
[1]Officer Weaver's first name does not appear in the notes of testimony.

**Commonwealth v. Baldwin**, No. 436 MDA 2015, unpublished memorandum at 1-4 (Pa.Super. filed December 2, 2015) (some brackets in original) *quoting* Trial Court Opinion, 4/28/15, at 1-5.

On March 4, 2015, Appellant filed a notice of appeal, and this Court denied the same in the aforecited December 2, 2015, Memorandum decision. The Pennsylvania Supreme Court denied Appellant's Petition for Allowance of Appeal on May 11, 2016.

On December 14, 2016, Appellant filed a timely, *pro se* Motion for Post Conviction Collateral Relief. In its Order entered on January 4, 2017, the PCRA court appointed PCRA counsel who filed an Amended Motion for Post Conviction Collateral Relief on March 6, 2017, and a supplement thereto on

June 13, 2017. On September 6, 2017, the PCRA court held an evidentiary hearing. In an Opinion and Order filed on January 22, 2018, the PCRA court denied Appellant's PCRA Petition. In doing so, the court found Appellant essentially was attempting to relitigate the existence of probable cause underlying his arrest, an issue this Court had addressed and rejected on direct appeal, by couching it as an ineffective assistance of counsel claim.

Appellant filed a timely notice of appeal, and on February 21, 2018, the PCRA court entered its Order pursuant to Pa.R.A.P. 1925(b). Appellant filed his Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) on March 12, 2010. On March 27, 2018, the PCRA court filed its Rule 1925(a) Opinion wherein it reiterated that Appellant improperly is seeking to relitigate the existence of probable cause underlying his arrest, because this Court previously addressed this claim on direct appeal. The Court further indicated its January 22, 2018, Opinion sufficiently articulated its reasons for denying Appellant's PCRA petition and incorporated that document for purposes of Pa.R.A.P. 1925(a).

In his brief, Appellant presents the following Statement of Questions Involved:

> I.    Whether the PCRA court erred, as a matter of law, when it determined Appellant's claim related to trial counsel's ineffective assistance in failing to properly cross-examine Detective Rolland Breault, III at Appellant's suppression hearing lacked merit?
>
> II.    Whether the PCRA court erred, as a matter of law, when it denied Appellant an evidentiary hearing on his three claims of ineffective assistance related to trial and appellate counsel's

failure to challenge the appropriate grading of the intimidation of a witness allegations so that a concession as to probable cause existing for the misdemeanor version of the charge would have prohibited Appellant's warrantless arrest? Whether the PCRA court also erred when it determined Appellant's grading-based claims were previously litigated; the claims were related to the suppression matter, but not the same claim or issue as was previously litigated by trial and appellate counsel.

Brief for Appellant at viii.

Our standard of review for issues arising from the denial of PCRA relief is well-settled:

> "Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Hanible**, 612 Pa. 183, 204, 30 A.3d 426, 438 (2011) (citing **Commonwealth v. Colavita**, 606 Pa. 1, 21, 993 A.2d 874, 886 (2010)). We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. **Id**.... "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Roney**, 622 Pa. 1, 16, 79 A.3d 595, 603 (2013).

**Commonwealth v. Mason**, 634 Pa. 359, 387, 130 A.3d 601, 617 (2015).

Counsel is presumed to be effective. **Commonwealth v. Washington**, 592 Pa. 698, 712, 927 A.2d 586, 594 (2007). To overcome this presumption and plead and prove ineffective assistance of counsel, a petitioner must establish by a preponderance of the evidence: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. **Commonwealth v. Stewart**, 84 A.3d 701, 706 (Pa.Super. 2013) (*en banc*),

*appeal denied*, 625 Pa. 664, 93 A.3d 463 (2014). Failure to establish any one of these prongs will defeat an ineffectiveness claim. **Mason**, 634 Pa. at 388, 130 A.3d at 618.  In addition,

> An assessment of appellate counsel's ineffectiveness for failing to raise a claim of trial counsel's ineffectiveness involves the same type of proof required for any claim of ineffective assistance of counsel. The petitioner has the burden of pleading and proving that the underlying claim has arguable merit (i.e., that trial counsel in fact rendered ineffective assistance in the manner that should have been alleged on appeal); appellate counsel did not have a reasonable strategic basis for failing to raise the claim; and the petitioner was prejudiced, as there is a reasonable probability that the outcome of the direct appeal would have been different if appellate counsel had raised the omitted claim. **Commonwealth v. Blakeney**, 108 A.3d 739, 750 (Pa.2014), *cert. denied,* ––– U.S. ––––, 135 S.Ct. 2817, 192 L.Ed.2d 857 (2015); **Commonwealth v. Lopez**, 578 Pa. 545, 854 A.2d 465, 469 & n. 5 (2004).

**Commonwealth v. Williams**, 636 Pa. 105, 154, 141 A.3d 440, 470 (2016).

Appellant first maintains trial counsel failed to cross-examine "properly" Detective Breault at the suppression hearing on the following topics which he opines could have been used as "impeachment fodder": "Detective Breault's status as the prosecuting officer in both Kyle Baldwin and Appellant's case; the grading of the intimidation charge; the timing and context of the information provided by the victim(s); the existence of an arrest warrant; and any mention of Appellant having access to firearms."  Brief for Appellant at 27.   Appellant goes on to discuss numerous alleged inconsistencies in the Detective's testimony at the suppression and PCRA hearings and claims that "[w]hile each of these unaddressed inconsistencies or questionable explanations may not have individually given Appellant's claim arguable merit,

the cumulative prejudice derived from the totality of them provides the arguable merit for Appellant's claim." ***Id***. at 38. Appellant further reasons that:

> [w]hen Attorney Dougherty failed to thoroughly impeach the credibility of the Commonwealth's only witness capable of providing any basis of probable cause for Appellant's warrantless arrest, Appellant suffered great prejudice. Not only was his suppression motion denied, said denial virtually guaranteed his felony drug convictions.

***Id***. at 43.

Upon our review of the record, and in particular the transcript from the September 6, 2017, PCRA hearing, we agree with the PCRA court that Appellant's first issue presents a new theory of relief pertaining to the issue of whether officers had probable cause to make a felony arrest. In ***Commonwealth v. Howard***, 553 Pa. 226, 280–281, 719 A.2d 233, 240 (1998), the Pennsylvania Supreme Court held that a petitioner "is precluded from raising a claim of post-conviction review that was previously and finally litigated on direct appeal.... Further, an appellant cannot obtain collateral review of previously litigated claims by alleging ineffective assistance of prior counsel and presenting new theories of relief."

On direct appeal, Appellant maintained that his arrest was unconstitutional because of both the lack of a warrant and absence of probable cause. This Court recognized it was undisputed that police did not have a valid arrest warrant at the time of Appellant's arrest, despite the fact that some officers involved were under the mistaken belief that a valid warrant had

been issued at some point. **Commonwealth v. Baldwin**, No. 436 MDA 2015,

unpublished memorandum at 7 (Pa.Super. filed December 2, 2015). We

ultimately held:

> Instantly, Detective Breault was investigating reports that multiple individuals were intimidating the victims of the October 26, 2013 shooting. The perpetrator of that crime was [Appellant's] brother Kyle. Kyle Baldwin was charged with discharging a firearm into an occupied structure, which is graded as a third-degree felony. See 18 Pa.C.S. § 2707.1(b).
>
> Detective Breault received reports that, within a couple of days after the shooting, three individuals had threatened and intimidated the victims of Kyle Baldwin's shooting. Detective Breault presented a photo array to the victim. The victim selected [Appellant's] photograph from the eight contained in the array. One week later, [Appellant] again appeared at the victim's home and parked his car in front of the residence, but he left before he could be apprehended.
>
> From this information, a reasonable police officer could have concluded that probable cause existed to arrest [Appellant] for the crime of intimidation of a witness, which would have been graded as a felony because the underlying offense, discharging a firearm into an occupied structure, was a felony. **See** 18 Pa.C.S. § 4952(b)(4). [Appellant] appeared at the home of the victims of a crime that his brother perpetrated and threatened the occupants. One of the victims identified [Appellant] as one of the actors. Finally, [Appellant] revealed himself as one of the actors when he went back to the victim's home a short time later and parked in front of the residence. Probable cause existed to arrest [Appellant] for a felony, and, consequently, the arrest was not unconstitutional. The trial court correctly did not suppress the evidence that resulted from [Appellant's] arrest.

**Id**. at 8-9 (footnote omitted).

At the PCRA hearing, Appellant initially questioned trial counsel Dennis

Dougherty regarding his strategy in choosing not to have the preliminary

hearing transcribed and in deciding not to record it on his cell phone. N.T.

PCRA Hearing, 9/6/17, at 34-35, 42-44. Appellant briefly explored Attorney

Dougherty's cross-examination of Detective Breault at the suppression hearing and asked him if he would be surprised to learn it spanned just three pages. *Id.* at 40. Attorney Dougherty stated he was not surprised, and after showing Attorney Dougherty the transcript, Appellant asked him if: "there [is] anything that jumps out at you based on hearing Detective Breault's testimony earlier and some of our questions, is there anything that you feel like you missed or you could have delved into further that you would have done differently?" *Id*. at 41. Attorney Dougherty responded, [n]ot particularly, no[]" to this inquiry. *Id*. Appellant did not question Attorney Dougherty about specific areas into which the latter might have chosen to delve more fully or suggest how additional questioning of Detective Breault might have bolstered his suppression motion.

> "Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Colavita,* 606 Pa. 1, 993 A.2d 874, 887 (2010) (quoting *Commonwealth v. Howard,* 553 Pa. 266, 719 A.2d 233, 237 (1998)). "A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.* A claim of ineffectiveness generally cannot succeed "through comparing, in hindsight, the trial strategy employed with alternatives not pursued." *Commonwealth v. Miller,* 572 Pa. 623, 819 A.2d 504, 517 (2002).

*Commonwealth v. Sneed*, 616 Pa. 1, 19–20, 45 A.3d 1096, 1107 (2012).

As noted previously, Attorney Dougherty questioned Detective Breault at the suppression hearing regarding the information that led to Appellant's

detention, and this Court found that probable cause existed for Appellant's arrest. In doing so, we noted no deficiencies in the officer's testimony and stressed it was undisputed that officers did not have a valid arrest warrant for Appellant at the time the heroin and cocaine was seized; notwithstanding, we found that from the information the victims had provided, probable cause existed to arrest him for a felony. "The mere fact that current counsel might have utilized an alternative strategy does not render the approach of trial counsel ineffective." *Id*. Accordingly, the claim that Attorney Dougherty counsel failed to "properly" cross-examine Detective Breault fails.

Appellant next asserts the trial court erred when it denied him an opportunity to explore at the PCRA hearing three claims of trial and appellate counsels' failure to challenge the appropriate grading of the intimidation of a witness allegations. However, "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa.Super. 2008), *appeal denied*, 598 Pa. 764, 956 A.2d 433 (2008). "A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and denying relief without an evidentiary hearing." **Commonwealth v. Jordan**, 772 A.2d 1011, 1014 (Pa.Super. 2001).

Appellant's arguments to the contrary, the PCRA court entertained a great deal of argument from him regarding the grading of the intimidation charge at the PCRA hearing. N.T.PCRA Hearing, 9/6/17, at 4-15. Appellant explained that the relevance of the grading of the offense had "to do with the probable cause for the arrest and Detective Breault's credibility regarding the information he had prior to those charges." Thus, once again, Appellant's arguments admittedly pertain to the previously decided issue of the existence of probable cause for his arrest. As the PCRA court stated:

> [Appellant] persists with the claim that probable cause did not exist to effectuate a felony arrest. In these proceedings, he appears to argue that Detective Breault, this [c]ourt and the Superior Court improperly graded [Appellant's] intimidation charge as a felony of the third degree. [Appellant] claims that this [c]ourt and the Superior Court "automatically" and improperly graded the charge as a felony of the third degree because the underlying charge, discharge of a firearm into an occupied structure, was a felony of the third degree.[34] [Appellant] claims that the record lacks evidence or testimony that would demonstrate [Appellant] threatened to employ force or violence upon the witness or victim or any other person as required by 18 Pa.C.S.A. § 4952(b)(1) to make the offense a felony.[35]
>
> In support of his claim, [Appellant] takes single statements of both courts completely out of context and ignores other relevant findings and testimony, including that Detective Breault was informed and believed that [Appellant] had made threats to one of the victims concerning the other victim. In its Opinion on direct appeal, this [court] specifically noted the comments allegedly made by [Appellant] concerning watching the victim's wife walk to work every day.[36] Additionally, the Superior Court specifically noted that "Detective Breault received reports that...three individuals had threatened and intimidated the victims of Kyle Baldwin's shooting."[37] Testimony at the suppression hearing established that both the victims and Detective Breault perceived [Appellant] to be making threats towards the victims.[38] The totality of the circumstances resulting in Detective Breault's perception that [Appellant] had made a threat of violence, the only

perception that was relevant in the suppression proceedings,[39] was further expounded by Detective Breault at the PCRA hearing. Detective Breault testified that from his perspective, a relative of the suspect in the underlying charge, a charge involving the discharge of a firearm into an occupied structure, had approached a victim of that incident, without having any prior contact or relationship with or any other reason to approach that victim, and made comments concerning the relative, the incident and the reason for their presence in the neighborhood, and then commented that he watches the victim's wife, the other victim of the underlying incident, walk to work every day.[40] Detective Breault further explained that in addition to the information he had received from the victim(s), he knew that a gun and a lot of drugs had been seized in connection with the incident and that [Appellant] himself was suspected of selling drugs in the area.[41] The record and prior findings of both this [c]ourt and the Superior Court clearly establish that at the time of [Appellant's] arrest, Detective Breault had probable cause to believe that [Appellant] had threatened violence upon a witness, victim or other person to intimidate or attempt to intimidate a witness or victim in a case involving a felony of the third degree. Detective Breault, therefore, had probable cause to believe [Appellant] had committed a felony.

___

[34] Amended Mot. for Post-Conviction Collateral Relief, 03/06/17, 1 19(d), 21(b).

[35]*See*, Amended Mot. for Post-Conviction Collateral Relief, 03/06/17,1 19(d), 21(b), Ex. F; N.T. PCRA Hearing, 09/06/17, pp. 6-8.

[36] Opinion, 04/28/15, pp. 2, 9.

[37] *Com. v. Baldwin*, No. 436 MDA 2015, 12/02/2015 Memorandum, p. 8.

[38] N.T. Suppression Hearing/Bench Trial, 10/27/14, pp. 7, 10, 16-17.

[39]The standard for determining whether probable cause exists for "a warrantless arrest is governed by the totality of the circumstances. *Com. v. Evans*, 661 A.2d 881, 884 (Pa.Super. 1995)(citing *Illinois v. Gates*, 462 U.S. 213 (1983)). The Court in *Evans* found probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Id*.

Trial Court Opinion, 1/22/18, at 8-10.

Upon our review of the record, we agree with the trial court's analysis. At the suppression hearing, Attorney Dougherty argued before the trial court "that probable cause didn't exist to stop [Appellant]," N.T. Suppression, 12/27-10/28/14, at 34, and Appellate counsel raised the same issue on direct appeal. However, Appellant now claims that these arguments waived Appellant's ability to concede "probable cause existed for the misdemeanor version of the offense," which would have prevented a warrantless arrest and mandated the exclusion of all evidence derived from Appellant's arrest. Brief for Appellant at 45. As the Commonwealth argues, Appellant's concession that probable cause existed for a misdemeanor Intimidation charge would not have changed the Commonwealth's burden of proving at the suppression hearing that officers had probable cause to arrest Appellant, because it was undisputed that Appellant had been arrested without a warrant. Commonwealth's Brief at 19. This Court previously determined on direct appeal that this burden had been met and, consequently, Appellant's arrest was legal.

The PCRA court was able to decide without an evidentiary hearing on these claims that they lacked merit. Thus, based on the foregoing, it follows that Collins's ineffectiveness of counsel claims must fail. *See Commonwealth v. Hall*, 582 Pa. 526, 872 A.2d 1177 (2005) (holding that three-prong standard for reviewing ineffectiveness claims applies to the performance of counsel at any level of representation); *Commonwealth v. Busanet*, 572

- 14 -

Pa. 535, 545, 817 A.2d 1060, 1066 (2002), *cert. denied*, 540 U.S. 869 (2003) (ruling that "failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim").

Finding no prejudice arising from trial counsel's alleged failure to challenge the appropriate grading of the intimidation of a witness allegations, we further conclude that appellate counsel cannot be deemed ineffective for failing to pursue such issue. ***See Commonwealth v. Jones***, 590 Pa. 202, 912 A.2d 268, 278 (2006) (holding that counsel cannot be deemed ineffective for failing to raise a meritless claim). Accordingly, Appellant properly was denied relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/30/2018