J-A28013-22

2023 PA Super 74

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYRONE S. ALEXANDER | : | |
| | : | |
| Appellant | : | No. 2260 EDA 2021 |

Appeal from the PCRA Order Entered October 5, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0014428-2013

BEFORE:  PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

OPINION BY PANELLA, P.J.:                                    **FILED MAY 2, 2023**

Tyrone Alexander appeals from the order dismissing his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546. Alexander argues the PCRA court erred in finding his claims of counsel's ineffectiveness to be meritless and in denying him a *nunc pro tunc* appeal to this Court. Following our review of the record and the PCRA court's decision, we affirm.

Following his first trial, resulting in a hung jury, Alexander's case was reassigned, and a new jury was selected. At jury selection on November 15, 2016, counsel raised two **Batson**[1] challenges on the basis that the prosecutor

---

[1] **Batson v. Kentucky**, 476 U.S. 79 (U.S. 1986) (allowing criminal defendants to raise claims that peremptory challenges were used by the prosecution for purposeful discrimination in selecting jurors at the defendant's trial).

used his peremptory strikes to eliminate young, Black jurors.[2] The trial court accepted the prosecutor's race-neutral reasons for using his strikes and the case proceeded to trial.

After hearing the evidence, the jury retired for deliberations. On the second morning of deliberations, the jury reached an impasse which required the foreperson to alert the judge that one juror, Juror Number 3, was refusing to vote due to their faith. The judge questioned the foreperson, Juror Number 3, and a randomly selected third juror and they all attested to the fact that the juror would not vote based on their faith. The trial court concluded that Juror Number 3 should be dismissed and an alternate juror seated for deliberations. Court staff was instructed to call Juror Number 13, who did not answer the phone. Court staff was then instructed to call Juror Number 14, who also did not answer immediately.

After two hours, Juror Number 13 had not called back. Juror Number 14 did respond and reported back to court. The reconstituted jury was then instructed that Juror Number 3 had been removed and it was to restart deliberations. The jury returned later that day with a verdict of not guilty of first-degree murder and guilty of second-degree murder, robbery and related firearms charges.

---

[2] In discussing the **Batson** issue, Appellant's Brief uses the term "African American" to discuss the jurors he believes were unfairly stricken. We will use the word "Black" when describing these jurors as that is the word they chose when identifying their race on the Juror Information Questionnaires provided by the trial court.

Alexander filed a post-sentence motion challenging the weight and sufficiency of the evidence which was denied by operation of law. He appealed to this Court, raising a weight and a sentencing issue; we vacated the sentence for robbery and affirmed in all other respects. *See **Commonwealth v. Alexander,*** 1190 EDA 2017 (Pa. Super. filed Feb. 11, 2019) (unpublished memorandum).

Alexander filed the instant PCRA petition *pro se* on February 3, 2020. The PCRA court ultimately entered an order dismissing the petition and this appeal followed. When we review a PCRA court's decision, we defer to that court's findings of fact and credibility determinations as supported by the record, but we review any legal conclusions *de novo*. *See **Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015). Further, we are limited to reviewing the findings of the PCRA court and the evidence on the record in the light most favorable to the prevailing party. *See **id***.

For ease of analysis, we will group Alexander's issues on appeal into ineffective assistance of trial counsel complaints and claims that the PCRA court should have allowed him to file a *nunc pro tunc* direct appeal to raise his underlying issues. We will address the ineffectiveness claims first.

Counsel is presumed effective and the person claiming ineffectiveness must prove otherwise. *See **Commonwealth v. Koehler***, 36 A.3d 121, 178 (Pa. 2012). To succeed on a claim of ineffective assistance of counsel, a petitioner must plead and prove three things: "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable

basis; and (3) actual prejudice resulted from counsel's act or failure to act." **Commonwealth v. Stultz**, 114 A.3d 865, 880 (Pa. Super. 2015) (citation omitted). If the petitioner fails to meet any one of these prongs, their claim fails. **See id**.

Alexander's first claim of ineffective assistance of counsel is that "counsel was ineffective for failing to object to the trial court's denial of Appellant's **Batson** challenge and waived the issue for direct appellate review." Appellant's Brief at 20. Alexander explains that counsel raised a **Batson** challenge twice on the basis that the prosecutor was using his peremptory strikes in a discriminatory manner to strike young, Black jurors. The jury ultimately included six Black jurors. The trial court conducted a hearing on the challenge and accepted the prosecutor's race-neutral explanations for his strikes. Counsel did not object to the denial of his challenge and did not object to the empaneling of the jury. **See id**. at 33. These failures, Alexander argues, resulted in waiver for direct review and constituted ineffectiveness. **See id**. at 34.

**Batson** established that it is unconstitutional to use peremptory strikes in a purposefully discriminatory manner. **See** 476 U.S. 79, 100 (U.S. 1986). A defendant initiating a **Batson** challenge must make a *prima facie* showing that the prosecutor struck a juror or jurors on the basis of race. **See Commonwealth v. Edwards**, 177 A.3d 963, 971 (Pa. Super. 2018). If the defendant makes a *prima facie* showing, the burden shifts to the prosecutor to provide a race-neutral explanation for their strikes. **See id**. At that point,

the court must determine whether the defendant has proven purposeful discrimination. **See id**.

Alexander argues counsel failed to preserve the **Batson** issue for direct appeal because he did not specifically utter the word "objection" when the trial court ruled against him on his **Batson** challenge at jury selection. However, there is no specific requirement under Pennsylvania law that counsel utter the word "objection" to preserve an issue for appeal. Rather, to preserve a **Batson** claim, counsel must only raise the claim during *voir dire* and make an adequate record of the facts underlying counsel's claim. **See Commonwealth v. Jones**, 951 A.2d 294, 299 (Pa. 2008). Here, Alexander's counsel repeatedly objected to the prosecutor's use of peremptory strikes during *voir dire*. **See** N.T., 11/15/16, at 72-73 ("I'm making a **Batson** challenge at this point. So far the Commonwealth has struck four people, everyone is an African-American[.]"); **id**., at 82 ("Judge, I'm going to **Batson** challenge here.")

We agree with the PCRA court and the Commonwealth that there is no arguable merit to this claim because it is factually incorrect and trial counsel did in fact preserve the **Batson** issue for direct review.

Alexander next claims trial counsel was ineffective by failing to preserve an objection to the prosecutor's use of peremptory strikes against "young" jurors in violation of his right to have a jury selected from a fair cross-section of the community. **See** Appellant's Brief at 39. During the **Batson** challenge, the prosecutor offered "[l]ife experience, young … the Commonwealth is looking for people that have life experiences" as his reason for striking two

jurors peremptorily. N.T., 11/15/16, at 86-87. Defense counsel objected to the striking of young people, arguing that it was a violation of Alexander's constitutional rights and due process and that he would not get a jury of his peers. *See id*. at 88.

Once again, we note that this objection was sufficient to preserve Alexander's *Batson* challenge based on the age of the jurors struck. Alexander has therefore not established arguable merit for his claim that trial counsel was ineffective in raising his age-related *Batson* challenge before the trial court.

Next, Alexander claims trial counsel was ineffective for failing to preserve an objection to a violation of Pennsylvania Rule of Criminal Procedure 645. *See* Appellant's Brief at 44. This time, Alexander essentially claims that counsel did not clearly object to seating Juror Number 14 over Juror Number 13 after the trial court discharged Juror Number 3.

During deliberations, the jury foreperson sent the court a note that there was an issue with Juror Number 3. After the trial court examined the foreperson, Juror Number 3, and Juror Number 10 (as a random juror suggested by defense counsel), it presented defense counsel a choice:

> THE COURT:     Your option is to go forward with what you have or to bring in 13 or 14.
>
> [Counsel:]      No, I want to bring in 13.
>
> THE COURT:     So 13 is not answering, we've moved onto 14 who is also not answering. So whoever calls back first is the one up.

[Counsel:] Got you.

N.T., 11/22/16, at 16-17. While counsel initially requested Juror Number 13 over Juror Number 14, he was not aware of the circumstances at that time. Once the trial court explained the circumstances, counsel did not object to the trial court's decision to choose the alternate juror based on who responded first. We therefore agree with Alexander that trial counsel failed to preserve any challenge to seating Juror Number 14.

That does not end our analysis of the arguable merit prong of Alexander's ineffectiveness claim. We must determine whether any such challenge to seating Juror Number 14 had arguable merit: "[T]rial counsel can never be found ineffective for failing to raise a meritless claim." *Commonwealth v. Fetter*, 770 A.2d 762, 770 (Pa. Super. 2001) (citation omitted). Alexander claims trial counsel should have objected to seating Juror Number 14 based on Pa.R.Crim.P. 645(A). That rule states that "[a]lternate jurors, in the order in which they are called, shall replace principal jurors who become unable or disqualified to perform their duties[.]" Alexander is therefore requesting that we determine whether Rule 645(A) allows for alternate jurors to be seated out of order under these circumstances.

"The proper interpretation of a rule of criminal procedure is a question of law, for which the standard of review is *de novo* and the scope of review is plenary." *Commonwealth v. Lopez*, 280 A.3d 887, 894 (Pa. 2022). We construe the rules of criminal procedure through the application of the rules

- 7 -

of statutory construction. ***See id***. at 896. We therefore seek to determine and achieve the intent of the Supreme Court of Pennsylvania when it promulgated the rule. ***See id***. While the plain language of the rule is the best evidence of the Supreme Court's intent, we must read the language in context, not in isolation. ***See id***.

Here, the key word to our analysis is "shall." The legal import of the word "shall" is usually, but not always, consonant with "must:"

> Although some contexts may leave the precise meaning of the word "shall" in doubt, ***see*** B. Garner, Dictionary of Modern Legal Usage 939 (2d. ed. 1995) ("Courts in virtually every English speaking jurisdiction have held—by necessity—that *shall* means *may* in some contexts, and vice versa"), this Court has repeatedly recognized the unambiguous meaning of the word in most contexts. ***See e.g., Oberneder, supra***; ***see also Zane v. Friends Hospital***, 836 A.2d 25, 32 (Pa.2003) ("the verbiage that the documents '*shall* be kept confidential' is plainly not discretionary but mandatory in this context"); ***Cranberry Park Associates v. Cranberry Township Zoning Hearing Board***, 561 Pa. 456, 751 A.2d 165, 167 (2000) ("Here, the word 'shall' denotes a mandatory, not permissive instruction."); ***Coretsky v. Board of Commissioners of Butler Township***, 520 Pa. 513, 555 A.2d 72, 74 (1989) ("By definition, 'shall' is mandatory."). ***Cf. Francis v. Corleto***, 418 Pa. 417, 211 A.2d 503, 509 (1965) (the word "shall [is] usually considered to be mandatory, but it is the intention of the legislature which governs, and this intent is to be ascertained from a consideration of the entire act, its nature, its object and the consequences that would result from construing it one way or the other.").

***In re Canvass of Absentee Ballots of November 4, 2003 Gen. Election***, 843 A.2d 1223, 1231–32 (Pa. 2004).

With this in mind, we conclude that Rule 645(A) is mandatory, not discretionary, in nature. A trial court has no discretion to choose a different alternate juror to seat once a principal juror has been discharged. The court must seat the next alternate juror according to juror number.

However, the fact that the court has no authority to choose the order in which to seat alternate jurors does not mean trial courts should be precluded from recognizing practical circumstances. Where, as here, the trial court has retained, but not sequestered, the alternate jurors after the principal jurors have begun deliberations, there will always be a practical issue of contacting and recalling the alternates.[3] A trial court is not required to delay deliberations indefinitely when the next alternate juror cannot be contacted or timely recalled. Instead, the court has reasonable leeway under the rule to address such circumstances.

Even under such circumstances, though, the court does not have unfettered discretion. As always, the court must exercise its discretion in a manner that does not indicate partiality, bias, or ill-will, or in a manner that is totally devoid of reason.

Here, the record reveals that immediately after concluding Juror Number 3 was to be discharged, but before questioning Juror Number 10, the trial

---

[3] Rule 645(A) "does not require that all retained alternate jurors be sequestered." Pa.R.Crim.P. 645(A), *Comment*. Instead, the trial court has discretion to determine what restrictions to place on alternates to ensure their availability and eligibility for substitution should the need arise. ***See id***.

court intended to replace her with Juror Number 13. *See* N.T., 11/22/16, at 11. An attempt was made to call Juror Number 13, but she did not answer the call. *See id*. at 14. The court then instructed a staff member to call Juror Number 14. *See id*. After questioning Juror Number 10, the court indicated that Juror Number 14 had also not answered his phone. *See id*. at 16.

The court then stated that "whoever calls back first is the one" the court would seat to replace Juror Number 3. *Id*. As such, it is clear the trial court did not "choose" to seat Juror Number 14 over Juror Number 13. Rather, the court followed the dictates of Rule 645(A) and first tried to seat Juror Number 13. When Juror Number 13 did not answer the call, the court was presented with a choice between possibly delaying the jury's deliberations indefinitely by waiting for Juror Number 13 to respond or attempting to promptly return the jury to deliberating by contacting Juror Number 14. We cannot conclude that the trial court abused its discretion by contacting Juror Number 14 under these circumstances. Nor can we conclude it was an abuse of discretion to leave the ultimate decision of which juror to seat to the facially-neutral circumstance of which one was the first to return to the courtroom under these circumstances. As such, Alexander's fifth issue merits no relief.

Next, Alexander claims trial counsel was ineffective for failing to request a mistrial or a poll of the remaining jurors regarding their impartiality. *See* Appellant's Brief at 51. Alexander argues trial counsel should have requested the trial court to question each juror regarding the discharged juror to

determine whether any jurors were tainted and, if they were, to request a mistrial. ***See id***. at 51-52. The trial court questioned the discharged juror, the foreperson and one other randomly selected juror regarding the reasons for the juror's discharge. ***See*** N.T. 11/22/2016 at 5-16. All three jurors made it clear that Juror Number 3 purported to be unable to vote due to her faith. ***See id***. Further, the trial court's questioning of Juror Number 3 indicated she was unaware that the nature of serving on a jury would require her to stand in judgment. ***See id***. at 6-10.

Alexander contends the trial court was required to question each juror individually to determine if the discharged juror had improperly influenced them. However, the court was not required to individually poll every juror. Instead, the court was required to determine that the functioning of the jury would not be harmed by: (1) interviewing the alternate juror on the record to ensure he had not been improperly influenced; (2) instructing the reconstituted jury that the juror was not replaced due to her view of the evidence; and (3) instructing the reconstituted jury to disregard all prior deliberations and begin deliberations again. ***See*** Pa.R.Crim.P. 645(C). Alexander does not allege, nor does the record reflect, that the trial court failed to comply with Rule 645(C). As such, Alexander has failed to establish arguable merit for his ineffectiveness claim. Further, since the court complied with Rule 645(C), there were no grounds for a mistrial. Accordingly, Alexander's final allegation of trial counsel ineffectiveness merits no relief.

We therefore turn to Alexander's claims that the PCRA court erred by denying his request for certification for a *nunc pro tunc* appeal. Alexander argues that the PCRA court should have granted his request for a *nunc pro tunc* appeal to raise his issues regarding the **Batson** challenge, the constitutional violation of striking all young venirepersons, and the alleged violation of Pa.R.Crim.P. 645(A). **See** Appellant's Brief at 7-8. While each of these claims is distinct, they all share a common reliance on **Commonwealth v. Little**, 246 A.3d 312 (Pa. Super. 2021).

In **Little**, the defendant was charged with murder. As part of his defense, Little presented the testimony of Khaliaf Alston, who admitted to shooting and killing the victim. The Commonwealth was permitted to impeach Alston's testimony with the fact that he was serving two life sentences and therefore "he had nothing to lose[.]" Little's trial counsel sought to "refute the Commonwealth's false inference [by pointing] out that [Alston] *did* have something to lose" since Alston could face the death penalty if he were charged and convicted of the murder he was confessing to. **Id**. at 323 (emphasis in original). The trial court in **Little** concluded that, in the absence of evidence that the Commonwealth intended to charge Alston with the murder, his belief that he could be charged was irrelevant. It therefore precluded Little's counsel from questioning Alston about the possibility of the death penalty. **See id**. at 320.

On direct appeal, a panel of this Court found that Little had waived the issue of whether Alston could be questioned about the death penalty by failing

to preserve it in the trial court. ***See id***. at 320-21. Little subsequently filed a PCRA petition claiming, in relevant part, that trial counsel had been ineffective for failing to preserve the death penalty issue. ***See id***. at 322. The PCRA court denied Little relief on that claim.

On appeal from that denial, a panel of this Court reversed the PCRA court on the issue of questioning Alston on the possibility of the death penalty. The panel concluded that Little was entitled to a *nunc pro tunc* direct appeal on the issue of whether the trial court had erred in precluding counsel from questioning Alston on the possibility of the death penalty. ***See id***. at 331-332.

***Little*** is easily distinguished from the circumstances here. The ***Little*** panel concluded that Little's counsel had failed to preserve a claim of trial court error that had arguable merit. In contrast, we have found that Alexander's claims of ***Batson*** violations were properly preserved for review on direct appeal by trial counsel. Further, we have concluded Alexander failed to establish arguable merit for the claim underlying his assertion counsel was ineffective for failing to preserve the issue of seating alternate Juror Number 14. Under these circumstances, a *nunc pro tunc* direct appeal would offer Alexander no relief. As Alexander has failed to convince us that the reasoning in ***Little*** applies here, his final three arguments on appeal merit no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/2023