J-S28041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEYON EDWARD LUCAS | : | |
| | : | |
| Appellant | : | No. 1384 WDA 2022 |

Appeal from the PCRA Order Entered November 2, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001573-2017

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: OCTOBER 6, 2023**

Appellant Keyon Edward Lucas appeals from the order of the Court of Common Pleas of Erie County denying his petition pursuant to the Post-Conviction Relief Act (PCRA).[1] After careful review, we affirm.

This Court summarized the facts of this case on direct appeal:

> On January 23, 2017, Lavell Beason and four other individuals traveled in a minivan to East 22nd Street between Ash and Wallace Streets in the City of Erie. Once they arrived at their destination, Beason's mother went inside a building to look at an apartment.

> While the minivan was parked on the street, Beason exited and greeted several individuals congregating on a porch of a nearby home. Appellant was one of the individuals on the porch; however, Beason did not shake hands or speak with him. Beason then returned to the vehicle and sat in the front passenger seat.

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

A few moments later, Appellant approached the van, pulled out a handgun, and fired four times into the van, striking Beason once in the neck and once in the chest. Beason was taken to the hospital, where he was pronounced dead.

*Commonwealth v. Lucas*, 70 WDA 2021 (Pa.Super. April 11, 2022) (unpublished memorandum) (spacing added and footnotes omitted). Appellant was apprehended one month later in Detroit, Michigan, by the U.S. Marshals Fugitive Apprehension team that discovered Appellant hiding in the crawlspace of a home. Notes of Testimony (N.T.), Trial, 2/19/20, at 157-63.

Although Appellant was a juvenile at the time of the shooting, he was charged with general homicide and related offenses in criminal court. Initially Appellant filed a decertification motion to transfer the case to juvenile court. The trial court scheduled a hearing to hear the decertification motion, at which Appellant notified the trial court through counsel that he wished to withdraw his decertification motion. Appellant signed a written colloquy indicating that he was aware of his right to seek decertification and the factors involved in this decision. On October 30, 2019, the trial court entered an order indicating that it had found Appellant's withdrawal of his decertification motion to be knowing, intelligent, and voluntary.

Appellant filed a pretrial motion *in limine* to contest the admissibility of still images captured from a surveillance video from Seraphin's Market at the time of the shooting. As the Erie Police Department had lost the original video from which the still images were taken, trial counsel argued that there was no way of assessing the accuracy of the timestamp data on the still images. The trial court granted Appellant's motion and determined that the still images

were only admissible if the timestamp data was redacted. Trial counsel did not claim the images themselves should have been excluded.

Thereafter, Appellant proceeded to a jury trial at which the prosecution presented the eyewitness testimony of Latasha Myers, the victim's aunt who was present in the minivan at the time of the shooting. Ms. Myers testified that she saw Appellant approach the minivan, reveal a firearm, look directly at her, and fire five shots in the direction of the minivan. N.T., 2/19/20, at 62-63, 82-89, 94. Ms. Myers was able to identify Appellant as the individual who shot her nephew. *Id*. at 114-117; N.T., 2/24/20, at 120-21.

The victim's girlfriend, Markeara Ott, who was also in the minivan, indicated that Appellant was present at the scene at the time of the shooting, but admitted she did not see the shooting itself. N.T., 2/18/20, at 54, 59-60, 76, 81-83, 116; N.T., 2/24/20, at 84-87.

William Wall also testified that he had told police in a statement just days after the victim's death that he was on the porch with Appellant when the victim approached. N.T., 2/18/20, at 127-32. After the victim walked away from the porch, Wall indicated that he saw Appellant fidgeting with a silver firearm and then disappear between two houses. N.T., 2/18/20, at 132-33, 145-48, 150-53, 175. Sensing something was about to occur, Wall indicated that he walked away from the porch and did not see the shooting occur. N.T., 2/18/20, at 148-49, 154-55. Wall was able to describe Appellant's silver firearm to detectives. N.T., 2/18/20, at 173-78.

The prosecution admitted a photo of Appellant uploaded to Facebook six weeks before the shooting that showed Appellant holding a firearm consistent with the limited number of firearm models that could have been the murder weapon based on bullets and casings found at the crime scene. Further, forensic analysis revealed gunshot residue on the sweatshirt believed to have been worn by Appellant on the day of the shooting.

At the conclusion of trial, the jury convicted Appellant of third-degree murder, aggravated assault (five counts), recklessly endangering another person ("REAP") (four counts), possession of a firearm without a license, possession of a firearm by a minor, possession of an instrument of crime, discharge of a firearm in an occupied structure, and flight to avoid apprehension.

On August 28, 2020, the trial court imposed an aggregate sentence of twenty to forty-nine years' imprisonment to be followed by four years' probation. On April 11, 2022, this Court affirmed the judgment of sentence. Appellant did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On August 28, 2022, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, who filed a supplemental petition on Appellant's behalf. On October 10, 2022, the PCRA court issued notice of its intent to dismiss the PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. On November 2, 2022, the PCRA court issued a final order dismissing the petition. Appellant filed a timely appeal and complied with the trial court's

order directing him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises one issue for review on appeal:

Whether the trial court committed legal error and abused its discretion in failing to grant PCRA relief predicated on a finding of ineffective assistance of counsel in that defense counsel failed to duly raise and preserve a legal challenge to the admissibility of the still images of the lost videotape surveillance footage from the market offered into evidence at trial by the Commonwealth to any extent, with or without the timestamps?

Appellant's Brief, at 2. After Appellant filed his counseled brief, Appellant filed a *pro se* "Petition for Remand," wherein he alleged that PCRA counsel was ineffective in filing a deficient appellate brief and in failing to raise other claims seeking collateral relief, which we will discuss *infra*.

In addressing Appellant's ineffectiveness claims, we are guided by the following principles:

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000).... Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. *See Pierce*, *supra*; *Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

[***Commonwealth v. Natividad***, 595 Pa. 188, 207–208, 938 A.2d 310, 321 (2007);] ***see also Commonwealth v. Hall***, 582 Pa. 526, 537, 872 A.2d 1177, 1184 (2005) (stating an appellant's failure to satisfy any prong of the ***Pierce*** ineffectiveness test results in a failure to establish the arguable merit prong of the claim of ineffectiveness).

***Commonwealth v. Johnson***, 179 A.3d 1105, 1114 (Pa.Super. 2018).

We first review Appellant's argument that trial counsel was ineffective in failing to challenge the admissibility of the still images from the Seraphin's Market surveillance video instead of merely seeking the redaction of the timestamp data on those still images. Appellant claimed the photos were unreliable as there was no way to determine the specific timing of the images in absence of the actual video. As discussed on direct appeal,

> The still images from Serafin's Market camera were admitted at trial along with video recordings from several other cameras along Ash Street that showed the path that [William] Wall traveled in the aftermath of the shooting as well as to capture the minivan driving toward the hospital. N.T., 2/24/20, at 37-43, 98-110; Commonwealth Exhibits N-1 to N-6. Upon the admission of the still images from Serafin's Market, Detective Christopher Janus of the Erie Police Department testified that this video appeared to have been inadvertently deleted in the three years between the shooting and trial, although officers had taken screenshots of the video when they originally reviewed it, which were the images shown at trial. N.T., 2/24/20, at 108-09. The videos and still images were utilized in part to corroborate Wall's testimony that he walked away from the scene just before the shooting occurred, as well as to undermine the defense theory that Wall was the actual shooter based upon initial statements made to police by numbers of Beason's family blaming Wall for Beason's death.

***Lucas***, 70 WDA 2021, at *10.

The PCRA court found no merit to Appellant's claim that trial counsel was ineffective in failing to ask the trial court to exclude the still images, as

the PCRA court indicated that it would have ruled such images to be admissible as the photos did not violate the "best evidence rule."

However, we need not determine whether such images were admissible, as Appellant has not shown prejudice from trial counsel's failure to move for their exclusion. The still images from Serafin's Market's surveillance video were cumulative evidence as the prosecution presented video recordings from other surveillance systems showing Wall and his companions walking away from the crime scene.

In addition, the Commonwealth presented substantial evidence of Appellant's guilt at trial, including three witnesses who were at the crime scene. Latasha Myers testified that she witnessed Appellant fire shots directly at the minivan where she and Markeara Ott were sitting with the victim, who was hit with two bullets. Ms. Myers was able to identify Appellant as the shooter. While Ms. Ott did not witness the shooting itself, she testified that she saw Appellant was present at the scene before the shooting. William Wall gave a statement to police a few days after the victim's death indicating that he saw Appellant acting suspiciously after encountering the victim on a porch where Wall was standing with Appellant. Wall specifically called seeing Appellant fidgeting with a silver firearm before hiding between two buildings.

The prosecution presented a photo showing Appellant holding a firearm that was consistent with the murder weapon given the bullet casings found at the crime scene as well as Wall's description of the firearm. Forensic evidence showed that the hooded sweatshirt that Appellant was wearing at the time of

the shooting had gunshot residue on the right sleeve. Further, after the shooting, Appellant fled to Detroit where he was discovered hiding from authorities in a crawlspace where he had no reasonable purpose to be present.

In light of evidence that the prosecution presented at Appellant's trial, we cannot find that there was a reasonable probability of a different outcome if not for trial counsel's failure to object to the admission of the still images from Serafin's Market. Thus, this claim of ineffectiveness fails.

In addition to single issue raised in his counseled brief, Appellant filed a *pro se* motion in this Court raising two claims of the ineffectiveness of PCRA counsel, who is currently representing Appellant. In **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), our Supreme Court held that "a PCRA petitioner may, after a PCRA court denied relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **Id**. at 401. To be entitled to a remand, an appellant "must provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness. That is, he must establish that there are issues of material facts concerning claims challenging counsel's stewardship and that relief may be available." **Commonwealth v. Parrish**, 273 A.3d 989, 1006 (Pa. 2022) (citing **Bradley**, 261 A.3d at 402)).

As Appellant's challenges to PCRA counsel's ineffectiveness were not raised before the PCRA court, we must determine whether the record is sufficient to address Appellant's claims or whether it is necessary to remand for the PCRA court to resolve these claims with a more developed record.

Appellant first argues that PCRA counsel was ineffective in failing to seek collateral relief by arguing that trial counsel was ineffective in failing to argue that the trial court "violated Appellant's right to an open trial by conducting jury selection in the anteroom." Application for Remand, 6/20/23, at 1-2.

In evaluating similar arguments, our courts have recognized that a defendant has a right to a public trial, which operates (1) to prevent an accused from being subject to a star chamber proceeding; and (2) to assure the public that standards of fairness are being observed." ***Commonwealth v. Harris***, 703 A.2d 441, 445 (Pa. 1997) (citing ***Commonwealth v. Berrigan***, 501 A.2d 226 (Pa. 1985)). Nevertheless, "[a]lthough the right to a public trial is applicable to voir dire proceedings, a trial judge may, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial." ***Harris***, 703 A.2d at 445 (citing ***Press–Enterprise Company v. Superior Court***, 464 U.S. 501 (1984)).

In ***Harris***, the trial court conducted collective *voir dire* in the courtroom and questioned each prospective juror individually in the anteroom, outside the hearing of the venire panel. The Supreme Court recognized that the trial court employed this procedure to promote efficiency as the alternative procedure would have been to place the panel in a room far removed from the courtroom and bring each juror separately for questioning. As the record did not contain any evidence that the public was excluded from the individualized *voir dire*, the Supreme Court rejected Harris's claim that the trial court violated his right to a public trial. ***But see Commonwealth v. Johnson***, 455 A.2d

654 (Pa.Super. 1982) (concluding that the trial court violated the defendant's right to a public trial when it denied the defendant's request for the public to be present during jury).

Similarly, in this case, there is no evidence in the record that any member of the public was denied access to the juror questioning that occurred in the anteroom. The record does not contain an exclusionary order or any indication that the trial court prohibited anyone from observing the individual *voir dire* questioning. The jury selection process was transcribed by a court report and included in the certified record. Thus, Appellant's claim does not rise above a boilerplate allegation.

As a result, we find no merit to Appellant's claim that his right to a public trial was violated. Accordingly, counsel cannot be deemed ineffective in failing to raise a meritless claim. ***Commonwealth v. Alexander***, 296 A.3d 1, 6 (Pa.Super. 2023).

Appellant also claims that PCRA counsel was ineffective in failing to claim trial counsel was ineffective in failing to object to the trial court's jurisdiction. While Appellant does not challenge the filing of murder charges or aggravated assault charges against him in criminal court, Appellant asserts that the trial court had no jurisdiction over the remaining charges: REAP, possession of a firearm without a license, possession of a firearm by a minor, possession of an instrument of crime, discharge of a firearm in an occupied structure, and flight to avoid apprehension. We disagree.

As a general rule, "the prosecution of criminal offenses charged to juvenile offenders is within the exclusive jurisdiction of the juvenile court." ***Commonwealth v. Harvin***, 581 A.2d 929, 930 (Pa.Super. 1990). However, the Legislature has vested original jurisdiction in the criminal courts for offenses excluded from the definition of a "delinquent act": 1) murder, 2) specified violent felonies committed by juveniles fifteen years of age and older, 3) summary offenses, and 4) "crime[s] committed by a child who has been found guilty in a criminal proceeding for other than a summary offense." 42 Pa.C.S.A. § 6302.

When a juvenile is charged with offenses in the criminal court's original jurisdiction, Section 6322 of the Juvenile Act provides a mechanism for a juvenile defendant to seek to transfer his case to juvenile court. Section 6322 provides:

> ... In determining whether to transfer a case charging murder or any of the offenses excluded from the definition of "delinquent act" in section 6302, the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest. In determining whether the child has so established that the transfer will serve the public interest, the court shall consider the factors contained in section 6355(a)(4)(iii) (relating to transfer to criminal proceedings).

42 Pa.C.S.A. § 6322(a).

Our Supreme Court has emphasized that "the special treatment provided to criminal offenders by the Juvenile Act is not a constitutional requirement, [but rather] a statutory creation." ***Commonwealth v. Cotto***, 753 A.2d 217, 223 (Pa. 2000) (citing ***Commonwealth v. Williams***, 522 A.2d

- 11 -

1058 (Pa. 1987)). The Supreme Court has established that it is constitutional to place the burden of proof on a juvenile defendant who seeks to justify the transfer of a murder case to juvenile court. **Commonwealth v. Pyle**, 343 A.2d 101, 107 (1974):

> The decision to transfer has no bearing on either the procedural or substantive aspects of the criminal conviction in criminal court (i.e., it is still the Commonwealth's burden to prove every fact necessary to constitute murder beyond a reasonable doubt). Consequently, placing the burden on a petitioner in this manner in no way denied him his due process safeguards.

*Id*. at 107, n.12 (citations omitted).

The Supreme Court has reaffirmed the holding in **Pyle** and expressly indicated that "the rationale of **Pyle** is applicable to charges other than murder where *those charges arise out of the same criminal transaction as a murder charge*." **Cotto**, 735 A.2d 217 (citing **Commonwealth v. Romeri**, 470 A.2d 498, 505 (Pa. 1983), **Commonwealth v. Keefer**, 367 A.2d 1082, 1084–85 (Pa. 1976)).

In **Romeri**, the Supreme Court rejected the juvenile's argument that the trial court had no jurisdiction to allow the Commonwealth to prosecute non-homicide charges in adult criminal court against a juvenile charged with murder. In that case, Romeri was charged with first-degree murder, felony murder, theft, receiving stolen property, and conspiracy.

The Supreme Court held that "where murder charges are filed in an adult court against a juvenile, that court also has jurisdiction over other charges filed and arising from the same criminal transaction." **Romeri**, 470

A.2d at 505. In reaching this conclusion, the **Romeri** Court cited to Section 6322(a) of the Juvenile Act which provides that in relevant part:

> (a) General rule .... if it appears to the court in a criminal proceeding other than murder, that the defendant is a child, this chapter shall immediately become applicable, and the court shall forthwith halt further criminal proceedings, and, where appropriate, transfer the case to the division or a judge of the court assigned to conduct juvenile hearings, together with a copy of the accusatory pleading and other papers, documents, and transcripts of testimony relating to the case. *If it appears to the court in a criminal proceeding charging murder,* that the defendant is a child, *the case may similarly be transferred* and the provisions of this chapter applied.

42 Pa.C.S.A. § 6322(a)(emphasis added).

The **Romeri** Court determined that the plain language of Section 6322 provides if there is a criminal proceeding charging murder, the trial court has discretion to transfer the entire case (including non-murder charges) to juvenile court, but "there is no absolute requirement of transfer." **Romeri**, 470 A.2d at 505. We agree with the **Romeri** court's observation that:

> This reading of the statute—that jurisdiction over all murder and non-murder charges filed in the same criminal episode resides in the adult court—is bolstered by the consideration that it is unrealistic to believe that a youthful offender who the court determines cannot profit from the care, guidance and control aspects of a juvenile proceeding on the murder charge—as happened in this case—would be amenable to such care, guidance and control on the non-murder charges arising from the same criminal transaction.

*Id*. Moreover, the **Romeri** Court noted that offenses arising out of a single criminal episode or course of conduct should be tried together to promote

fairness to the defendant and judicial economy. *Id*. (citing *Commonwealth v. Keefer*, 367 A.2d 1082, 1085 (Pa. 1977)).

In this case, the trial court had original jurisdiction over Appellant's murder charge pursuant to Section 6322. As such, we reject Appellant's claim that the trial court had no jurisdiction over Appellant's non-homicide charges that arose from the same criminal transaction. We reiterate that trial counsel cannot be found ineffective in failing to raise a meritless claim. *See Alexander*, *supra*.

For the foregoing reasons, we affirm the PCRA court's order denying Appellant's petition and conclude that it is not necessary to remand for any additional proceedings on the claims in Appellant's Petition for Remand.

Order affirmed. Petition for Remand denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/6/2023